UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IGY OCEAN BAY PROPERTIES LIMITED and    :
ISLAND GLOBAL YACHTING LTD.    :
    :
                     Plaintiffs    : Civil Action No. 07-10520 (VM)
    :
        -against-    :
    :
OCEAN BAY PROPERTIES I LIMITED,    :
OCEAN BAY PROPERTIES II LIMITED,    :
BRITISH COLONIAL DEVELOPMENT COMPANY    :
LIMITED, PRK HOLDINGS LTD., ADURION    :
CAPITAL LIMITED and GEORGE ALLEN,    :
    :
              Defendants    :
------------------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS PRK HOLDINGS LTD.'S,
ADURION CAPITAL LIMITED'S AND GEORGE ALLEN'S
MOTION TO DISMISS THE COMPLAINT BASED ON
<u>LACK OF PERSONAL JURISDICTION PURSUANT TO F.R.C.P. 12(b)(2)</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 1

  A.  BACKGROUND ............................................................................................... 1

  B.  PRK, ADURION AND ALLEN.............................................................................. 2

POINT I.  THE COURT LACKS PERSONAL JURISDICTION OVER PRK, ADURION, AND ALLEN.......................................................................................................... 3

  A.  GENERAL PRINCIPLES REGARDING JURISDICTION............................................. 3

    1.  Burden on Plaintiffs ................................................................................. 3

    2.  Allegations Regarding Jurisdiction in the Complaint ................................... 4

  B.  THE COURT DOES NOT HAVE JURISDICTION OVER PRK, ADURION OR ALLEN UNDER THE NEW YORK LONG-ARM STATUTE ....................................... 5

    1.  General Jurisdiction ................................................................................. 5

      a.  This Court Does Not Have General Jurisdiction Over PRK........................... 6

      b.  This Court Does Not Have General Jurisdiction Over Adurion ...................... 7

      c.  This Court Does Not Have General Jurisdiction Over Allen .......................... 7

    2.  Specific Jurisdiction................................................................................ 8

      a.  Jurisdiction Under C.P.L.R. § 302(a)(1)....................................................... 8

        i.  This Court Does Not Have Jurisdiction Over PRK Under C.P.L.R. § 302(a)(1) ........................................................................................ 10

        ii.  This Court Does Not Have Jurisdiction Over Adurion Under C.P.L.R. § 302(a)(1) ........................................................................................ 10

        iii.  The Court Does Not Have Jurisdiction Over Allen Under C.P.L.R. § 302(a)(1) ........................................................................................ 12

      b.  The Court Does Not Have Jurisdiction Under C.P.L.R. § 302(a)(2).............. 14

      c.  The Court Does Not Have Jurisdiction Under C.P.L.R. § 302(a)(3).............. 15

        i.  Plaintiffs Fail to Satisfy the "Situs of Injury" Requirement .................... 17

        ii.  The Court Does Not Have Jurisdiction Over PRK Under C.P.L.R. § 302(a)(3) ........................................................................................ 18

        iii.  The Court Does Not Have Jurisdiction Over Adurion Under C.P.L.R. § 302(a)(3) ........................................................................................ 19

        iv.  The Court Does Not Have Jurisdiction Over Allen Under C.P.L.R. § 302(a)(3) ........................................................................................ 19

    3.  Due Process.......................................................................................... 20

      a.  Minimum Contacts.................................................................................... 20

      b.  Reasonableness ....................................................................................... 22

CONCLUSION.................................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Agency Rent a Car Sys., Inc. v. Grand Rent A Car Corp.,
    98 F.3d 25 (2nd Cir. 1996) ............................................................................................3

Asahi Metal Ind. Co., Ltd. v. Superior Court,
    480 U.S. 102 (1987)............................................................................................21, 22

Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,
    171 F.3d 779 (2nd Cir. 1999) .....................................................................................16, 20

Barrett v. Tema Dev. (1988) Inc.,
    463 F. Supp.2d 423 (S.D.N.Y. 2006).................................................................4, 13

Berkshire Capital Group, LLC v. Palmet Ventures, LLC,
    2007 WL 2757116 (S.D.N.Y. Sept. 21, 2007)........................................................14

Bonis v. Dynamic Entry Corp.,
    2004 WL 2966924 (W.D.N.Y. Dec. 31, 2004).........................................................3

Burger King Corp. v. Rudzewicz,
    471 U.S. 462 (1985)................................................................................................21

Caldor v. Jones,
    465 U.S. 783 (1984)................................................................................................21

Catalfamo v. Jacobsen Race Cars, Inc.,
    866 F. Supp. 79 (N.D.N.Y. 1994).........................................................................17

Cortland Line Co., Inc. v. Vincent,
    1999 WL 305369 (N.D.N.Y. May 7, 1999).......................................17, 18, 19, 20

DiStefano v. Carozzi North America, Inc.,
    286 F.3d 81 (2nd Cir. 2001)....................................................................................16

Hanson v. Denckla,
    357 U.S. 235 (1958)................................................................................................21

International Shoe Co. v. Washington,
    326 U.S. 310 (1945)................................................................................................20

J.L.B. Equities, Inc. v. Owen Fin. Corp.,
    131 F. Supp.2d 544 (S.D.N.Y. 2001)......................................................................5

Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd.,
    956 F. Supp. 1131 (S.D.N.Y. 1997)......................................................................*passim*

KIC Chem., Inc. v. ADCO Chem. Co.,
    1996 WL 122420 (S.D.N.Y. Mar. 20, 1996) ........................................................17

Landoll Res. Corp. v. Alexander & Alexander Serv., Inc.,
    918 F.2d 1039 (2nd Cir. 1990) ...................................................................5, 6, 7, 8

Levisohn, Lerner, Berger & Langsam v. Medical Taping Sys., Inc.,
    10 F.Supp.2d 334 (S.D.N.Y. 1998)................................................................16, 18

Maranga v. Vira,
    386 F. Supp.2d 299 (S.D.N.Y. 2005)................................................................3, 4

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,
    84 F.3d 560 (2d Cir. 1996)...............................................................4, 20, 22, 23

Morse Typewriter Co., Inc. v. Samanda Office Comm. Ltd.,
    629 F.Supp. 1150 (S.D.N.Y. 1986)...............................................................16, 18

Panacea Solutions, Inc. v. Roll,
    2006 WL 3096022 (S.D.N.Y. Oct. 31, 2006) .................................................14, 15

Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC,
    450 F.3d 100 (2nd Cir. 2006)...............................................................................9

Sun Micro Med. Tech. Corp. v. Passport Health Comm., Inc.,
    2006 WL 3500702 (S.D.N.Y. Dec. 4, 2006) .....................................................15

Universal Marine Medical Supply, Inc. v. Lovecchio,
    8 F. Supp.2d 214 (E.D.N.Y. 1998) ................................................................5, 8

Wiwa v. Royal Dutch Petroleum Co.,
    226 F.3d 88 (2nd Cir. 2006)........................................................................6, 7, 8

World-Wide Volkswagen Corp. v. Woodson,
    444 U.S. 286 (1980)...........................................................................................21

**STATE CASES**

Deutsche Bank Securities, Inc. v. Montana Bd. of Investments,
    21 A.D.2d 90 (1st Dep't 2005) .....................................................................13, 20

Marie v. Altschuler,
    30 A.D.3d 271, 817 N.Y.S.2d 261 (1st Dep't 2006) .............................................13

Sybron Corp. v. Wetzel,
    46 N.Y.2d 197 (N.Y. 1978) ..............................................................................16

**STATE STATUTES**

C.P.L.R. § 301.................................................................................................................5, 6, 7, 8

C.P.L.R. § 302(a)(1) ................................................................................................ *passim*

C.P.L.R. § 302(a)(2) .....................................................................................................14, 15

C.P.L.R. § 302(a)(3) ................................................................................................ *passim*

**RULES**

Fed. R. Civ. P. 12(b)(2)......................................................................................................1

Defendants PRK Holdings Ltd. ("PRK"), Adurion Capital Limited ("Adurion"), and George Allen ("Allen" and, collectively with PRK and Adurion, the "Non-contracting Defendants"), by their attorneys Wormser, Kiely, Galef & Jacobs LLP and Weil, Gotshal & Manges LLP, respectfully submit this Memorandum of Law, accompanying Declaration of Eugene Fraser, President of PRK (the "Fraser Decl."), accompanying Declaration of Jürg Gassmann, General Counsel to, and a non-executive director of Adurion (the "Gassmann Decl."), and accompanying Declaration of George Allen (the "Allen Decl.") in support of their motion to dismiss the Complaint for lack of personal jurisdiction over them pursuant to Fed. R. Civ. P. 12(b)(2).

## PRELIMINARY STATEMENT

All six defendants, including the Non-contracting Defendants and defendants Ocean Bay Properties I Limited ("OBI"), Ocean Bay Properties II Limited ("OBII") and British Colonial Development Company ("BCDC" and, collectively with OBI and OBII, the "Contracting Defendants") are moving to dismiss all seven causes of action. For simplicity, the Contracting and Non-contracting Defendants (collectively, "Defendants") are making three separate but related motions. This memorandum only addresses the motions by PRK, Adurion and Allen to dismiss the Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

## STATEMENT OF FACTS

### A.    BACKGROUND

This litigation concerns the prospective sale and development of real property in Nassau, Bahamas pursuant to a Purchase Agreement, dated as of November 7, 2005, between the Contracting Defendants on the one hand, and Plaintiff IGY Ocean Bay Properties Limited ("IGY") on the other (the "Purchase Agreement"). OBI is the owner of approximately 3.05 acres

of real property in Nassau, Bahamas, and OBII is the owner of an adjacent 2.01 acres of real property. BCDC is the owner of the real property adjacent to OBI's property on which the British Colonial Hotel and office buildings are located. See Purchase Agreement at 1, attached to the Declaration of John T. Morin, dated December 20, 2007 (the "Morin Decl.") as Exhibit B.

Pursuant to the Purchase Agreement, IGY was to purchase OBI's and OBII's real property and develop "a mega-yacht marina and attendant facilities as well as other uses (such as retail and commercial space, parking and/or residential properties . . . ."[1]  See Purchase Agreement, at 1; See Complaint, ¶¶ 2, 28 (Exhibit A to Morin Decl.)

The transaction failed to close by the deadlines set forth in the Purchase Agreement including the "Initial Target Date" (Purchase Agreement, § 7.03), the "backup date" (id.), the "Outside Closing Date" (Purchase Agreement, at 5) or the two monthly contractual extensions permitted under the Purchase Agreement (id.).  On July 5, 2007, the Contracting Defendants terminated the Purchase Agreement by notice. See Exhibit D to Morin Decl.

Three months later, Plaintiffs commenced this action in state court, alleging a myriad of contractual and tort claims against the Contracting and Non-contracting Defendants.

The Defendants filed a Notice of Removal with this Court on November 21, 2007.

### B.    PRK, ADURION AND ALLEN

PRK is a limited liability company organized under the laws of the Commonwealth of the Bahamas (not under the laws of Canada as alleged in ¶19 of the Complaint).  Its principal place of business and registered office are in Nassau, Bahamas. See Fraser Decl., ¶¶ 3-4.  All of its business activity has been in the Bahamas.

---

[1]  In addition, BCDC was to provide certain easements and access rights over its property.

2

Adurion is a limited liability company organized and existing under the laws of England and Wales.  Its only place of business is in London, England.  It is a mid-market investment boutique active in the London market.  See Gassmann Decl., ¶¶ 3, 4.

Allen ("Allen") is an individual and a resident of the State of Florida, and has been a resident of that state for twenty-nine (29) years. See Allen Decl., ¶ 2.

Neither PRK, Adurion nor Allen was a party to the Purchase Agreement, nor were they to be parties to the Shareholders' Agreement.  See Gassmann Decl., ¶¶ 18-19; Allen Decl. ¶¶ 13-14, Fraser Decl. ¶ 5; Purchase Agreement, at 1, § 2.05, Schedule A.

## POINT I

### THE COURT LACKS PERSONAL JURISDICTION OVER PRK, ADURION, AND ALLEN

#### A.    GENERAL PRINCIPLES REGARDING JURISDICTION

##### 1.    Burden on Plaintiffs

Plaintiffs have the burden of demonstrating that the Court has personal jurisdiction over the Non-contracting Defendants.  See Maranga v. Vira, 386 F. Supp.2d 299, 302 (S.D.N.Y. 2005), citing Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2nd Cir. 1999).  When, as here, discovery has not been conducted, a plaintiff must make a prima facie showing of personal jurisdiction.  Maranga, 386 F. Supp.2d at 302.  However, bare conclusory allegations -- such as those found in the Complaint -- are insufficient to meet Plaintiffs' burden of making a prima facie showing of jurisdiction.  Bonis v. Dynamic Entry Corp., 2004 WL 2966924, at * 7 (W.D.N.Y. Dec. 31, 2004), citing Badger v. Lehigh Valley Railroad. Co., 45 A.D.2d 601, 603 (4th Dep't 1974).

In a diversity case such as this one, the Court determines personal jurisdiction according to the law of the forum state (in this case, New York).  See  Agency Rent a Car Sys., Inc. v.

Grand Rent A Car Corp., 98 F.3d 25, 29 (2nd Cir. 1996).  Furthermore, personal jurisdiction is determined "'with respect to each claim asserted.'"  Barrett v. Tema Dev. (1988) Inc., 463 F. Supp.2d 423, 428 (S.D.N.Y. 2006), (Marrero, J.), quoting Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2nd Cir. 2004).

The Court must conduct a two-part inquiry into whether personal jurisdiction exists.  First there must be a basis for personal jurisdiction under New York's long-arm statute.  If there is, the Court then determines if the exercise of such jurisdiction comports with the requirements of Due Process.  Kahn Lucas Lancaster, Inc. v. Lark Int'l Ltd., 956 F. Supp. 1131, 1134 (S.D.N.Y. 1997), citing Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).  These two inquiries are distinct because the New York long-arm statute does not provide for personal jurisdiction in every case in which due process would permit it.  Maranga, 386 F. Supp.2d, 305, citing Talbot v. Johnson Newspaper Corp., 71 N.Y.2d 827, 527 N.Y.S.2d 729 (1988).  In other words, New York's long arm statute does not provide jurisdiction to the full extent of constitutional due process.

### 2.    Allegations Regarding Jurisdiction in the Complaint

The Complaint contains broad, conclusory, and often inaccurate, allegations regarding personal jurisdiction over the Defendants.  In fact, the allegations are contained in a single paragraph and fail to identify which allegations pertain to which Defendant:

> Personal jurisdiction over Defendants is proper because Defendants consented to jurisdiction in the Purchase Agreement, the causes of action alleged herein arise out of the transaction of business within the State of New York, tortious acts committed within the State, and tortious acts causing injury within the State, and because on information and belief, Defendants transact business in the State of New York.

Complaint, ¶ 24.

4

The first basis for jurisdiction -- that "Defendants consented to jurisdiction in the Purchase Agreement" -- does not apply to PRK, Adurion or Allen, as none of them were parties to the Purchase Agreement.  The other alleged bases for personal jurisdiction are asserted in a single run-on-sentence that recites the various aspects of New York's long-arm statute without any factual basis regarding the application to each of the Defendants.  As this is the full extent of Plaintiffs' allegations regarding jurisdiction, Plaintiffs have plainly failed to make a prima facie showing of personal jurisdiction as required.

**B.    THE COURT DOES NOT HAVE JURISDICTION OVER PRK, ADURION OR ALLEN UNDER THE NEW YORK LONG-ARM STATUTE**

Though Plaintiffs do not allege in the Complaint which sections of the long-arm statute apply to which Defendants, analysis of each of the sub-sections of New York's long-arm statute demonstrates that the Court does not have personal jurisdiction over any of the Non-contracting Defendants.

**1.    General Jurisdiction**

N.Y. C.P.L.R. § 301 provides for jurisdiction over a non-domiciliary defendant where the defendant is "engaged in such a continuous and systematic course of doing business [in New York] as to warrant a finding of its presence in this jurisdiction." J.L.B. Equities, Inc. v. Owen Fin. Corp., 131 F. Supp.2d 544, 547 (S.D.N.Y. 2001).  The foreign defendant must be doing business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." Universal Marine Medical Supply, Inc. v. Lovecchio, 8 F. Supp.2d 214, 218 (E.D.N.Y. 1998), quoting Beacon Enter., Inc. v. Menzies, 715 F.2d 757, 762 (2nd Cir. 1983); see also Landoll Res. Corp. v. Alexander & Alexander Serv., Inc., 918 F.2d 1039, 1043 (2nd Cir. 1990) (defendant must engage in continuous, permanent and substantial activity).

Factors relevant to the determination of whether general jurisdiction exists under section 301 include: whether the defendant (1) maintains an office in New York; (2) has any bank accounts in New York; (3) has a telephone listing in New York; (4) solicits business in New York; and (5) has any employees or agents in New York. See Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 98 (2nd Cir. 2006).

### a.    This Court Does Not Have General Jurisdiction Over PRK

Despite the fact that they carry the burden of proof on this argument, Plaintiffs have failed to make adequate allegations regarding this Court's jurisdiction over PRK. In fact, the Complaint rarely makes reference to PRK at all.[2] Nonetheless, the relevant facts concerning this court's personal jurisdiction over PRK, laid out in detail in the Fraser Decl., readily demonstrate that such jurisdiction does not exist.

Contrary to the implications in paragraph 2 of the Complaint, PRK is not, and never was, a party to the Purchase Agreement. See Fraser Decl., ¶ 5.[3] Nor was PRK ever intended to be a party to the prospective Shareholder's Agreement referenced in the Complaint. See Fraser Decl., ¶ 7; Purchase Agreement, at 1, § 2.05, Schedule A. As it was not a party to the Purchase Agreement, PRK never consented to this Court's jurisdiction on this basis.

As further stated in the Fraser Decl., PRK does not transact any business in the State of New York; indeed, its entire activity has always been in the Bahamas. See Fraser Decl., ¶ 8. It has had absolutely no presence in New York State, much less the "continuous, permanent and substantial activity" required under section 301. See Landoll Res. Corp. v. Alexander &

---

[2] PRK is specifically mentioned in the Complaint only three times: in Paragraph 1 (where the parties are listed), in Paragraph 2 (where it is inappropriately included in the definition of "Sellers"), and Paragraph 19 (where it is inaccurately identified as a corporation organized under the laws of Canada).
[3] Therefore, Plaintiffs' designation of PRK as one of the "Sellers" in Paragraph 2 of the Complaint is both misleading and inaccurate.

Alexander Serv., Inc., 918 F.2d 1039, 1043 (2nd Cir. 1990); see also Fraser Decl. ¶¶ 8-18. Notably, PRK does not (i) have an office in New York; (ii) have any bank accounts in New York; (iii) have a telephone listing in New York; (iv) solicit business in New York; (v) have any employees or agents in New York; or (vi) own any real property in New York. Wiwa, 226 F.3d at 98; Fraser Decl., ¶¶ 8-18. Furthermore, it has never been incorporated or authorized to do business in New York. See Fraser Decl., ¶ 8.

In sum, there is no general jurisdiction over PRK under C.P.L.R. § 301.

**b.     This Court Does Not Have General Jurisdiction Over Adurion**

Once again, Plaintiffs have failed to allege any facts concerning any contact or presence in New York by Adurion, and therefore have not sufficiently alleged that Adurion engaged in a "continuous, permanent and substantial activity." Landoll Res. Corp., 918 F.2d at 1043.

As detailed in the Gassmann Decl., Adurion does not (i) have an office in New York; (ii) have any bank accounts in New York; (iii) have a telephone listing in New York; (iv) solicit business in New York; (v) have any employees or agents in New York; or (vi) own any real property in New York. See Wiwa, 226 F.3d at 98; Gassmann Decl., ¶¶ 7-15. Furthermore, it has never been incorporated or authorized to do business in New York. See Gassmann Decl. ¶¶ 5-6.

In sum, the Court does not have jurisdiction over Adurion under C.P.L.R. § 301.

**c.     This Court Does Not Have General Jurisdiction Over Allen**

As with PRK and Adurion, Plaintiffs have not alleged any facts concerning the Court's jurisdiction over Allen. As mentioned above and in the Allen Decl., Allen has been a resident of Florida for the past twenty-nine (29) years, and does not regularly travel to New York. See Allen Decl. ¶¶ 2, 4. He does not do, and Plaintiffs have not alleged that he does, business in New York with a "fair measure of permanence and continuity," as required. See Universal Marine Med.

Supply, 8 F. Supp.2d at 218; Landoll Res. Corp., 918 F.2d at 1043; see also Allen Decl., ¶¶ 5-12, 15-17.  Furthermore, he does not, among other things, (i) have an office in New York; (ii) have any bank accounts in New York; (iii) have a telephone listing in New York; (iv) solicit business in New York; (v) have any employees or agents in New York; (vi) own any interest in any companies or businesses located in New York; or (vii) own any real property in New York.  See Wiwa, 226 F.3d at 98; Allen Decl., ¶¶ 5-12

In sum, the Court does not have jurisdiction over Allen under C.P.L.R. § 301.

*        *        *

Based on the foregoing facts and legal principles, not only have Plaintiffs failed to carry their burden of establishing general jurisdiction over PRK, Adurion and Allen, they could not do so even if offered the opportunity to amend their Complaint.

### 2.    Specific Jurisdiction

If, as should be plain, there is no jurisdiction under Section 301, the Complaint will have to be dismissed unless Plaintiffs demonstrate that the Court may have "specific jurisdiction" over the Non-contracting Defendants under C.P.L.R. § 302.  Plaintiffs attempt to establish such jurisdiction by simply summarizing the language of C.P.L.R. §§ 302(a)(1), (2) and (3) without any application to individual defendants.  See Complaint, ¶ 24.

### a.    Jurisdiction Under C.P.L.R. § 302(a)(1)

C.P.L.R. § 302(a)(1) provides: "as to a cause of action arising from any acts of the enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state."

Under § 302(a)(1), two requirements must be met: (i) the defendant must have transacted business within the state and (ii) the claim asserted must arise from that business activity. See Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC, 450 F.3d 100, 103 (2nd Cir. 2006), citing McGowan v. Smith, 52 N.Y.2d 268, 273, 437 N.Y.S.2d 643 (1981). For a defendant to have "transacted business" within the state, the plaintiff must show that the defendant "'purposefully avail[ed] [itself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws.'" Kahn Lucas Lancaster, 956 F.Supp. at 1135, quoting Cutco Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2nd Cir. 1986). In this respect, courts must focus on the "totality of defendant's contacts with New York, rather than focus on each isolated event." Id. The Southern District has stated:

> In judging whether there are sufficient contacts, the New York Court of Appeals has cautioned that "we should not forget that defendants, as a rule, should be subject to suit where they are normally found, that is, at their pre-eminent headquarters or where they conduct substantial general business activities. McKee Elec. Co. v. Rauland-Borg Corp., 283 N.Y.S.2d 34, 38 (1967). Consequently, contacts thorough telephone calls, the mail, and by facsimile, are usually insufficient to confer jurisdiction.

Kahn Lucas Lancaster, 956 F.Supp. at 1135.

A claim will "arise from" a particular transaction if there is an "articulable nexus between the business transacted and the cause of action" or a "substantial relationship between the transaction and the claim asserted." See Sole Resort, 450 F.3d at 103 (citations omitted). Herein, since the claims asserted against PRK, Adurion and Allen all sound in tort and not breach, contacts with New York involving the Purchase Agreement would not be a sufficient nexus.

### i.    **This Court Does Not Have Jurisdiction Over PRK Under C.P.L.R. § 302(a)(1)**

PRK does not transact any business whatsoever within New York.  <u>See</u> Fraser Decl., ¶¶ 8-18.  Therefore, it cannot be "found" to have "purposefully availed itself of the privilege of conducting activities within [New York]."  <u>See</u> <u>Kahn Lucas Lancaster</u>, 956 F.Supp. at 1135.  As the Southern District has stated, defendants should only be subject to suit where they are normally found or conduct general business; but PRK is in no sense found in New York.  <u>Id.</u>

Even in the event the Court were to find that PRK transacts business in New York, the Complaint does not assert that any claims against PRK arose from such transactions; indeed, the Complaint fails to make <u>any</u> allegations against PRK.  Plaintiffs' allegations against PRK appear to be limited to those claims which are nominally asserted against "All Defendants."  Notably, none of these claims, which are the Fifth Cause of Action (Fraud in the Inducement), Sixth Cause of Action (Unfair Competition) and the Seventh Cause of Action (Tortious Interference with Prospective Business Relations with the Bahamian Government), have anything to do with New York.

In sum, there are absolutely no allegations in the Complaint indicating that PRK transacts business in New York or that the claims against PRK arose from business transacted in New York.  Therefore, the Court does not have jurisdiction over PRK under C.P.L.R. § 302(a)(1).

### ii.    **This Court Does Not Have Jurisdiction Over Adurion Under C.P.L.R. § 302(a)(1)**

Plaintiffs do not make any allegations that Adurion transacted business within New York.  Adurion does not in fact transact business in the state, and is not "found" in New York.  <u>Kahn Lucas Lancaster</u>, 956 F.Supp. at 1135.  Further, it was not a party to the Purchase Agreement or an intended party to the Shareholder's Agreement.  <u>See</u> Gassmann Decl. ¶¶ 5-19.  Therefore, like

PRK, Adurion cannot be found to have "purposefully availed itself of the privilege of conducting activities within [New York]." <u>Kahn Lucas Lancaster</u>, 956 F.Supp. at 1135. Jurisdiction is lacking on this basis alone.

Even in the event the Court were to find that Adurion transacts business in New York, Plaintiffs do not allege in the Complaint that any claims against Adurion arose from any such transactions. Plaintiffs assert five claims against Adurion: Tortious Interference with Contractual Relations (Third Cause of Action), Tortious Interference with Prospective Business Relations (Fourth Cause of Action), Fraudulent Inducement (Fifth Cause of Action), Unfair Competition (Sixth Cause of Action), and Tortious Interference with Plaintiffs' Prospective Business Relations with the Bahamian Government (Seventh Cause of Action).

On their face, the allegations contained in the Fifth through Seventh Causes of Action do not confer jurisdiction over Adurion. The Third and Fourth Causes of Action do not allege <u>any</u> conduct by Adurion in New York. The Fifth Cause of Action alleges that Allen made certain fraudulent statements as "Agent for the Sellers"; but Plaintiffs do not allege that Adurion is one of the "Sellers". The Sixth Cause of Action is essentially a breach of the confidentiality provisions in the Purchase Agreement; but, as Adurion was not a party to the Purchase Agreement, this cause of action cannot "arise from" that agreement. The Seventh Cause of Action ("Defendants'" alleged tortious interference with prospective business relations with the Bahamian government,) asserts no claim against Adurion.

Finally, none of these causes of action allege a nexus between business or activity in New York and the claim asserted.

Thus, jurisdiction over Adurion cannot be predicated on C.P.L.R. § 302(a)(1).

### iii.     The Court Does Not Have Jurisdiction Over Allen Under C.P.L.R. § 302(a)(1)

Plaintiffs have not sufficiently alleged, nor do the facts and allegations even indicate, that Allen has "purposefully availed" himself of the "privilege of conducting activities" in New York as required to establish jurisdiction under C.P.L.R. § 302(a)(1).  Kahn Lucas Lancaster, 956 F.Supp. at 1135.  Indeed, Allen does not transact any business in New York and does not regularly travel to New York.  See Allen Decl. ¶¶ 4-12.  As with PRK and Adurion, this alone should end the analysis.

However, were the Court to find that the Complaint sufficiently alleges that Allen has availed himself of the privilege of conducting business in New York, jurisdiction is still not proper under § 302(a)(1) as Plaintiffs do not assert that the claims against Allen "arose from" any business transactions in New York.

Plaintiffs asserts three causes of action against Allen.  Of these, the Sixth Cause of Action (unfair competition) and Seventh Cause of Action (tortious interference with the prospective business relationship between IGY and the Bahamian Government) are conclusorily asserted against "all Defendants."  Notably, however, the allegations setting forth these claims do not assert that Allen took any actions whatsoever, let alone actions that would constitute Allen's transacting business in New York.  Furthermore, the Sixth Cause of Action concerns breach of the confidentiality provisions in the Purchase Agreement.  However, as Allen was not a party to that agreement, such claims cannot support jurisdiction over him.  See Allen Decl., ¶ 13.[4] Finally, these claims do not arise from any business or activity in New York.  Thus, with respect to these claims, jurisdiction under § 302(a)(1) cannot be established.

---

[4] Furthermore, even though Allen had a few meetings in New York to negotiate the Purchase Agreement in 2004 and 2005, those meetings were prior to the execution of the Purchase Agreement, and therefore, the claims cannot be said to have "arisen from" the agreement.  See Allen Decl., ¶¶ 18-20.

The Fifth Cause of Action alleges that Allen made various misrepresentations regarding Adurion's intent to proceed to closing the transaction which had been negotiated. Complaint ¶ 90. Notably, Plaintiff does not even allege that those alleged statements were made in, or directed to, New York.

In 2004 and 2005, and prior to the execution of the Purchase Agreement, Allen made a few trips to New York to negotiate the Purchase Agreement with IGY. See Allen Decl., ¶¶ 18-19. Allen also corresponded with Andrew Farkas (the principal of IGY) and Mark Levy by email and occasionally by phone (sometimes cell phone) while Allen was in Florida or the Bahamas. At different points while communicating with Allen, Messrs. Farkas and Levy were in various locations worldwide, including St. Thomas, Dubai, and New York. He also met with them, as well as with other IGY personnel, in Florida and the Bahamas. See Allen Decl., ¶ 21. However, New York law makes clear that "contacts through telephone calls, the mail, and by facsimile, are usually insufficient to confer jurisdiction." Kahn Lucas Lancaster, 956 F. Supp. at 1135; see also Deutsche Bank Securities, Inc. v. Montana Bd. of Investments, 21 A.D.2d 90, 94 (1st Dep't 2005), citing Liberatore v. Calvino, 293 A.D.2d 217 (1st Dep't 2002) ("electronic communications, telephone calls or letters, in and of themselves, are generally not enough to establish jurisdiction" under section 302(a)(1)). Moreover, communication by cell phones and emails are not directed at any particular physical location because they are mobile modes of communication. See Marie v. Altschuler, 30 A.D.3d 271, 272 (1st Dep't 2006) (regarding cell phones).

Furthermore, courts do not find jurisdiction "when it is based primarily on communications between the parties unless those communications were an integral part of a transaction directed at New York." Barrett, 463 F. Supp.2d at 431 (emphasis added). Here, the

location of the transaction was uniquely <u>the Bahamas</u>, not New York. Allen did not attempt to project himself into New York and such communications did not involve a transaction directed at New York. Thus, such conduct does not confer jurisdiction over Allen under §302(a)(1). <u>See Berkshire Capital Group, LLC v. Palmet Ventures, LLC</u>, 2007 WL 2757116, at * 5 (S.D.N.Y. Sept. 21, 2007) ("Plaintiffs cite no case where emails and phone calls originating outside New York about a transaction which could occur only out of state have permitted the assertion of New York jurisdiction over out of state entities.")

Even if Allen's few trips to New York to negotiate the Purchase Agreement at least one year before the alleged tortious acts occurred (<u>see</u> Allen Decl., ¶¶ 18-19) were sufficient to constitute a "transaction of business," that pre-agreement conduct has nothing to do with the claims asserted against Allen. In particular, the Fifth Cause of Action (fraudulent inducement), does not allege that any of the communications made by Allen were made in or were directed at, New York. Similarly, the Sixth Cause of Action asserts a breach of the Purchase Agreement to which Allen was not a party. And, the Seventh Cause of Action does not allege any specific claims against Allen and, in any event, the claims are not related to, and do not "arise from", any contact that he had with New York since the wrongful actions were purportedly committed in the Bahamas.

For the above reasons, the Court does not have jurisdiction over Allen under § 302(a)(1).

### b.    The Court Does Not Have Jurisdiction Under C.P.L.R. § 302(a)(2)

A court will have jurisdiction under C.P.L.R. § 302(a)(2) over a cause of action "arising from" a non-domiciliary's commission of "a tortious act within the state". Thus, the Complaint must allege that the claimed tortious act or acts were committed while the defendant was physically present in New York. <u>See Panacea Solutions, Inc. v. Roll</u>, 2006 WL 3096022 at *4

(S.D.N.Y. Oct. 31, 2006), citing Bensusan Restaurant Corp. v. King, 126 F.3d 25, 28 (2nd Cir. 1997); Sun Micro Med. Tech. Corp. v. Passport Health Comm., Inc., 2006 WL 3500702 at *9 (S.D.N.Y. Dec. 4, 2006)

Plaintiffs have not alleged that the tortious acts reflected in the Third through Seventh Causes of Action were committed while any of the three Non-contracting Defendants were physically present in New York. Panacea Solutions, 2006 WL 3096022 at *4. Indeed, Plaintiffs do not even allege that anyone from PRK or Adurion was ever in New York. And, as to Allen, Plaintiffs do not allege that he made any of his supposed fraudulent statements while he was in New York.

Accordingly, the Court does not have jurisdiction over PRK, Adurion, or Allen under section 302(a)(2).

### c.     The Court Does Not Have Jurisdiction Under C.P.L.R. § 302(a)(3)

The last possible basis for personal jurisdiction under New York's long-arm statute is under C.P.L.R. § 302(a)(3). This section provides jurisdiction over a claim arising from a

> tortious act without the state causing injury to person or property within the state . . . if [the defendant] (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

In analyzing whether a tortious act has "caus[ed] injury to person or property within the state" under section 302(a)(3), courts apply a "situs-of-injury test," which initially requires a determination of the "original event which caused the injury." The location of the "original event" is not necessarily where the alleged was committed, nor is it necessarily where the final or resulting economic injury and the consequences of the tort are felt; instead the location of the

"original event" is where the "first <u>effect</u> of the tort . . . that ultimately produced the 'final economic injury' is located." <u>DiStefano v. Carozzi North America, Inc.</u>, 286 F.3d 81, 84-85 (2nd Cir. 2001), <u>quoting</u> <u>Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez</u>, 171 F.3d 779, 784 (2nd Cir. 1999) (even though an employee is fired at a meeting in New Jersey, the effect is felt in New York where the employee worked).

Central to this analysis is a recognition that, where the alleged tortious act took place outside of New York, the mere fact that the injured party is incorporated, or has its principal place of business, in New York, is <u>not</u> a sufficient basis for jurisdiction under section 302(a)(3). <u>See</u> <u>Levisohn, Lerner, Berger & Langsam v. Medical Taping Sys., Inc.</u>, 10 F.Supp.2d 334, 343 (S.D.N.Y. 1998); <u>see</u> <u>also</u> <u>Sybron Corp. v. Wetzel</u>, 46 N.Y.2d 197, 205 (N.Y. 1978). In other words, in claims involving commercial torts, the fact that financial loss or consequences are ultimately felt in New York because the plaintiff may be located here does not suffice to qualify New York as the "situs" of the injury. <u>See</u> <u>Morse Typewriter Co., Inc. v. Samanda Office Comm. Ltd.</u>, 629 F.Supp. 1150, 1156 (S.D.N.Y. 1986).

Moreover, under section 302(a)(3), even if Plaintiffs could demonstrate injury in New York, they must still demonstrate that PRK, Adurion and Allen <u>either</u> (1) regularly do or solicit business within New York, engage in a persistent cause of conduct in New York, or derive substantial revenue from goods used or consumed or services rendered in the State <u>or</u> (2) expect or should reasonably expect that the alleged tortious acts will have consequences within New York <u>and</u> they derive substantial revenue from interstate or international commerce. <u>See</u> C.P.L.R. § 302(a)(3).

With respect to the first alternative, defendants' contacts must be "'regular', 'persistent' or 'substantial . . . [A] plaintiff must show defendants' overall contact with New York is

'substantial enough to make it reasonable to subject [them] to jurisdiction and feasible for [them] to defend there.'" <u>Cortland Line Co., Inc. v. Vincent</u>, 1999 WL 305369 at * 5 (N.D.N.Y. May 7, 1999), <u>quoting</u> <u>Hearst Corp. v. Goldberger</u>, 1997 WL 97097, at *14 (S.D.N.Y. Feb. 26, 1997) and <u>Catalfamo v. Jacobsen Race Cars, Inc.</u>, 866 F. Supp. 79, 82 (N.D.N.Y. 1994).

Similarly, in order for Plaintiffs to demonstrate that Defendants expect or should reasonably expect the tortious act to have consequences in New York, Plaintiffs must show that Defendants had some "'purposeful affiliation' with the forum state." <u>Cortland Line Co.</u>, 1999 WL 305369 at * 6, <u>quoting</u> <u>Martinez v. American Standard</u>, 457 N.Y.S.2d 97 (2nd Dep't 1982), <u>aff'd</u> 60 N.Y.2d 873 (1983). For a court to find "purposeful affiliation", there must be "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" <u>Cortland Line</u>, 1999 WL 305369 at *6, <u>quoting</u> <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958).

Plaintiffs must also allege and provide evidence that the Defendants derive substantial revenue from interstate or international commerce. Failure warrants a dismissal for lack of personal jurisdiction. <u>KIC Chem., Inc. v. ADCO Chem. Co.</u>, 1996 WL 122420, at *8 (S.D.N.Y. Mar. 20, 1996); <u>Cortland Line</u>, 1999 WL 305369 at * 6.

As set forth below, Plaintiffs meet none of the required criteria.

### i.    <u>Plaintiffs Fail to Satisfy the "Situs of Injury" Requirement</u>

Plaintiffs fail to satisfy even the first requirement of this section, i.e., that there was an "injury" within New York. It appears that IGY is claiming that it incurred economic injury. IGY is, however a Bahamian corporation (<u>see</u> Complaint at ¶ 14), and while it claims to have a principal place of business in New York, the focus of IGY's business is centered in Nassau, Bahamas. Indeed, it is a single purpose company organized to obtain OBI's and OBII's property

and to develop an ambitious and expensive project in the Bahamas. Under New York law, the mere fact that a company has its principal place of business within the state is considered "fortuitous" and will not provide a sufficient basis for jurisdiction under section 302(a)(3). See Levinsohn, Lerner, Berger, 10 F.Supp.2d at 343. Further, as the claims all involve commercial torts that took place outside of New York, the mere fact that IGY is located within the state and therefore may ultimately experience financial loss in New York is not a sufficient basis on which to predicate personal jurisdiction. Id.; Morse Typewriter, 628 F. Supp. at 1156. Rather, the "first effect" of the alleged torts was felt in the Bahamas inasmuch as the underlying transaction involved Bahamian property and the transaction was terminated there.

Ideally, the Court's analysis under this section should end here. However, in the event that the Court finds that IGY felt injury in New York, we will analyze the other requirements under section 302(a)(3) to demonstrate further why personal jurisdiction does not exist in New York.

### ii.    The Court Does Not Have Jurisdiction Over PRK Under C.P.L.R. § 302(a)(3)

As stated above, PRK does not regularly do or solicit business in New York, nor does it derive any revenue from goods used or consumed or services rendered in New York. See Fraser Decl., ¶¶ 8-18. Furthermore, Plaintiffs have failed to allege that PRK had a "purposeful affiliation" with New York or that it avails itself of the privilege of conducting activities within New York. See Cortland Line, 1999 WL 305369 at * 6. Nor do Plaintiffs allege that PRK derives substantial revenue from interstate or international commerce; indeed, given that PRK's activity was focused solely on Nassau, Bahamas, they could not so allege. See Fraser Decl. ¶ 8.

Therefore, the Court does not have jurisdiction over PRK under C.P.L.R. § 302(a)(3).

### iii. The Court Does Not Have Jurisdiction Over Adurion Under C.P.L.R. § 302(a)(3)

Similarly Plaintiffs neither allege -- nor attempt to allege -- that Adurion regularly does or solicits business in New York, <u>or</u> that it derives <u>any</u> revenue from goods used or consumed or services rendered in New York.  Moreover, Adurion in fact does not do any business in New York, has not sought any business in New York (Gassmann Decl., ¶¶ 11-12), and does not derive substantial revenue from goods used or consumed or services rendered in New York State (Gassmann Decl., ¶ 16).

Furthermore, as with PRK, Plaintiffs have failed to allege that Adurion had a "purposeful affiliation" with New York, or that it avails itself of the privilege of conducting activities in New York.  <u>Cortland Line</u>, 1999 WL 305369 at * 6; Gassmann Decl., ¶ 11.  For this reason, personal jurisdiction under C.P.L.R. § 302(a)(3) cannot be predicated on Adurion's alleged tortious misconduct affecting property in the Bahamas owned by Bahamian companies (OBI, OBII and BCDC) which were negotiating to sell property to another Bahamian company (IGY).

### iv. The Court Does Not Have Jurisdiction Over Allen Under C.P.L.R. § 302(a)(3)

As is the case with PRK and Adurion, Plaintiffs do not allege that Allen regularly does or solicits business in New York, or that he derives <u>any</u> revenue from goods used or consumed or services rendered in New York.  In fact, he does not regularly do business or solicit business in New York, and he does not obtain substantial revenue from goods used or consumed or services rendered in New York. <u>See</u> Allen Decl., ¶¶ 9, 11, 12, 15.

In addition, Plaintiffs have not alleged -- because they cannot -- that Allen has had the required "regular", "persistent" or "substantial" contacts with New York.  Moreover, and as previously mentioned, communications by email or telephone are simply not enough to confer

jurisdiction under C.P.L.R. § 302(a)(3).  See Kahn Lucas Lancaster, 956 F. Supp. at 1135; see also Deutsche Bank Securities, Inc., 21 A.D.3d at 94.

Finally, Allen did not have any "purposeful affiliation" with New York in which he purposefully availed himself of conducting activities in New York.  See Cortland Line, 1999 WL 305369 at * 6; Allen Decl. ¶¶ 11, 12, 15.

For these reasons, personal jurisdiction over Allen cannot be predicated under C.P.L.R. § 302(a)(3) on Allen expecting or reasonably expecting that any tortious act he allegedly committed would have consequences in New York.

### 3.   Due Process

Even if the application of New York's long-arm statute were to confer personal jurisdiction over Defendants, the Court must then determine whether that jurisdiction comports with constitutional due process requirements.  See Bank Brussels Lambert, 171 F.3d at 784. Under a constitutional due process analysis, the Court must determine whether Defendants have sufficient contacts with New York so as to satisfy the test found in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.  Under International Shoe, the defendant must have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  International Shoe, 326 U.S. at 316 (citations omitted).   Accordingly, the due process test has two components: (i) the "minimum contacts" analysis and (ii)  the "reasonableness" analysis.  Metropolitan Life Ins., 84 F.3d at 567.

### a.   Minimum Contacts

The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or

relations.'"  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 471-72 (1985), <u>quoting</u> <u>International Shoe</u>, 326 U.S. at 319.  Therefore, a court may only exercise personal jurisdiction over a non-domiciliary defendant when "minimum contacts" exist between the defendants and New York. <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 291 (1980).

Put another way, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  <u>Hanson v. Denckla</u>, 357 U.S. at 253.  "Purposeful availment" means that the defendants must engage in activity that is "purposefully directed" at New York, <u>Asahi Metal Ind. Co., Ltd. v. Superior Court</u>, 480 U.S. 102, 112 (1987), or "expressly aimed" and "intentionally directed" at forum residents.  <u>Caldor v. Jones</u>, 465 U.S. 783, 789-90 (1984). Lastly, actions by the <u>defendants</u> must create a substantial connection with the forum state. <u>Asahi</u>, 480 U.S. at 109.  A connection arising from the fact that a plaintiff is located in New York is considered "fortuitous" and does not satisfy the purposeful availment requirement.  <u>Id</u>.

As detailed above, and as is apparent in the accompanying Declarations, none of the three Non-contracting Defendants have "purposefully directed" their activities at New York.  Nobody from PRK nor Adurion has been in New York either regarding the transaction at issue or to do or solicit any other business.  And Allen's few meetings in New York had nothing to do with the claims asserted against him – and cannot be said to constitute "purposeful" movements toward New York State or its residents.[5]

---

[5]  Nor could his e-mails and phone calls to Levy or Farkas since the recipients of such communications could have been anywhere in the world to receive cell phone calls and e-mails, and any landline phone calls between Allen and Farkas and/or Levy were not conducted by Allen with the intent to purposefully avail himself of the privilege of conducting activities in New York.

Indeed, the transaction in suit involves a development project in the Bahamas that has nothing to do with New York, and Plaintiff IGY is a Bahamian corporation. And, as Asahi cautions, the mere fact that IGY's principal place of business is in New York is not sufficient to satisfy the minimum contacts requirement. The assertion of personal jurisdiction over the Non-contracting Defendants simply because Plaintiffs may be located in New York would impermissibly shift the focus of the judicial inquiry from whether Defendants purposefully directed activities toward New York to whether the Plaintiff is randomly or fortuitously located within the state. As the only jurisdictional "link" to New York is the Plaintiffs having principal places of business in New York, the Due Process' minimum contacts standard cannot be satisfied.

### b.    Reasonableness

The Second Circuit has enumerated the following factors to be considered regarding the reasonableness requirement: (i) the burden on the defendant; (ii) the forum state's interest in adjudicating the dispute; (iii) the plaintiff's interest in obtaining convenient and effective relief; (iv) the interstate judicial system's interest in obtaining the most efficient resolution of controversy; and (v) the shared interest of the several states in furthering substantive social policies. Metropolitan Ins., 84 F.3d at 568 (citations omitted).

The balance of these equities greatly favors Defendants. Given that Adurion is located in Europe (Gassman Decl., ¶ 3), PRK is in the Bahamas (Fraser Decl., ¶ 3), Allen in Florida (Allen Decl., ¶ 2), and the transaction is Bahamas-based, defending this action in New York would be a substantial burden on them, since they have no connection to New York and are located outside New York. Furthermore, New York has no interest in adjudicating a dispute about a transaction that is taking place in the Bahamas, other than the fact that New York law applies to the contract

22

claims against the Contracting Defendants.  In fact, New York law may not even apply to the claims against PRK, Adurion, and Allen since they were not parties to the Purchase Agreement and the claims against them are not contractual.

Finally, the last three factors of <u>Metropolitan Life</u> are not served by continuing this action in New York, given that the alleged tortious misconduct is not claimed to have occurred in New York and such conduct concerns a uniquely Bahamian transaction.

*        *        *

Taking all these factors together, it would offend the traditional notions of fair play and substantial justice if this Court were to exercise personal jurisdiction over these three Non-contracting Defendants.

## CONCLUSION

Due to the foregoing, PRK, Adurion and Allen respectfully respect that this Court dismiss the Complaint for lack of personal jurisdiction subject to Fed. R. Civ. P. 12(b)(2).

Dated: New York, New York
      December 21, 2007

Respectfully submitted,


_____/s/_____
John T. Morin (JM-0390)
Jennifer L. Marlborough (JM-4303)
Wormser, Kiely, Galef & Jacobs LLP
825 Third Avenue
New York, NY 10022
(212) 687-4900

Bruce S. Meyer (BM-3506)
Ryan P. Poscablo (RP-8496)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

*Attorneys for Defendants*