UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IGY OCEAN BAY PROPERTIES LIMITED and            :
ISLAND GLOBAL YACHTING LTD.                     :
                                                :
                              Plaintiffs         :
                                                :
                  -against-                     :
                                                :        07-CV-10520 (VM)
OCEAN BAY PROPERTIES I LIMITED,                 :
OCEAN BAY PROPERTIES II LIMITED,                :
BRITISH COLONIAL DEVELOPMENT COMPANY            :
LIMITED, PRK HOLDINGS LTD., ADURION             :
CAPITAL LIMITED and GEORGE ALLEN,               :
                                                :
                              Defendants         :
------------------------------------------------------------------------x


**OCEAN BAY PROPERTIES I LIMITED, OCEAN BAY PROPERTIES II LIMITED,
AND BRITISH COLONIAL DEVELOPMENT COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

LEGAL STANDARD ..................................................................................2

ARGUMENT ..............................................................................................3

    A.    IGY'S FIRST CAUSE OF ACTION FOR BREACH OF
CONTRACT SHOULD BE DISMISSED BECAUSE IGY HAS
FAILED TO SUFFICIENTLY ALLEGE THE BREACH OF ANY
PROVISION IN THE PURCHASE AGREEMENT ....................................3

        1.    *The Provisions Allegedly Breached Do Not Apply to BCDC* ..........3

        2.    *IGY Has Failed To Plead The Breach Of Any Provision In
The Purchase Agreement Because Sections 5.05 and 7.03 Of
The Purchase Agreement Are Unenforceable As A Matter Of
Law* ...........................................................................................4

        3.    *IGY Does Not Sufficiently Allege That It Satisfied Its Closing
Conditions Under the Purchase Agreement Within The
Outside Closing Date And Thus Seller's Alleged Failure To
Use Best Efforts Is Irrelevant* ........................................................7

            a.    *IGY Has Not Alleged That It Was Granted Extensions
Of The Outside Closing Date In A Written Instrument
As Required By the Purchase Agreement and New
York's Statute of Frauds* .....................................................7

            b.    *Regardless Of When The Closing Date Passed, IGY
Does Not Allege That It Met All Of Its Closing
Conditions Within That Period* .............................................8

    B.    IGY'S SECOND "CAUSE OF ACTION" FOR SPECIFIC
PERFORMANCE SHOULD BE DISMISSED ............................................9

    C.    IGY'S FIFTH CAUSE OF ACTION CLAIMING FRAUDULENT
INDUCEMENT SHOULD BE DISMISSED ............................................11

        1.    *The Fraudulent Inducement Claim Should Be Dismissed
Because IGY Has Not Shown That It Relied on the
Misrepresentation Of A Material Fact* ...........................................12

        2.    *IGY Fails to Allege the Circumstances Constituting Fraud
With Particularity* .......................................................................13

    D.    IGY'S SIXTH CAUSE OF ACTION FOR UNFAIR
COMPETITION IS INSUFFICIENTLY PLED AND SHOULD BE
DISMISSED ............................................................................................15

i

**<u>TABLE OF CONTENTS</u>**
**(continued)**

**Page**

E.     IGY AND IGYL FAIL TO ALLEGE FACTS SUFFICIENT TO SUPPORT THEIR SEVENTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS CLAIM..................................................................................19

CONCLUSION ...........................................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adjustrite Systems, Inc. v. GAB Business Services, Inc.,* 145 F.3d 543 (2d Cir. 1998) ........................................................................................................................ 6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) .......................... 2

*Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*, 515 F. Supp. 2d 298 (S.D.N.Y. Aug. 29, 2007) ........................................................................................ 20, 21

*Am. Fin. Int'l Group-Asia, L.L.C. v. Bennett,* No. 05 Civ. 8988 (GEL), 2007 WL 1732427 (S.D.N.Y. Jun. 14, 2007)............................................................... 15, 19

*Appalachian Enters., Inc. v. ePayment Solutions, Ltd.*, No. 01 CV 11502 (GBD), 2004 WL 2813121, (Dec. 8, 2004) ................................................................ 14

*Astor Holdings, Inc. v. Roski*, 325 F. Supp. 2d 251 (S.D.N.Y. 2003)............................ 5

*Atari, Inc. v. Games, Inc.*, No. 04 Civ. 3723 (JSR), 2005 WL 447503 (S.D.N.Y. Feb. 24, 2005) ....................................................................................................... 16, 18

*Bell Atl. Corp. v. Twombly.*, 127 S. Ct. 1955 (2007) .................................. 1, 2, 18, 19, 23

*Black Radio Network, Inc. v. NYNEX Corp.*, No. 96 Civ. 4138(DC), 2000 WL 64874 (S.D.N.Y. Jan. 25, 2000)............................................................... 20, 21, 23

*Brownstone Inv. Group v. Levey*, 468 F. Supp. 2d 654 (S.D.N.Y. 2007)............................... 12, 13

*Bulger v. Royal Doulton, PLC*, No. 05 Civ. 7709(DAB), 2006 WL 3771016 (S.D.N.Y. Dec. 19, 2006)........................................................................................ 15, 19

*Camp Summit of Summitville, Inc. v. Visinski,* No. 06-CV-4994 (CM)(GAY), 2007 WL 1152894 (S.D.N.Y. April 16, 2007)................................................... 23, 24

*Candid Prods., Inc. v. International Skating Union*, 530 F. Supp. 1330 (S.D.N.Y. 1982) ............................................................................................................ 6

*Commercial Data Servers, Inc. v. Int'l Bus. Machs. Corp.*, 166 F. Supp. 2d 891 (S.D.N.Y. 2001) ................................................................................................. 15, 18

*Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ............................ 2

**TABLE OF AUTHORITIES**
(continued)

*Exportaciones Del Futuro S.A. De C.V. v. Iconix Brand Group Inc.*, No. 07 Civ. 4145(LBS), 2007 WL 3306699 (S.D.N.Y. Nov. 6, 2007) ......................................... 19, 23

*Gianni Versace, S.p.A. v. Versace*, No. 01 Civ. 9645 PKL THK, 2003 WL 470340 (S.D.N.Y. Feb. 25, 2003) ................................................................................. 21, 23, 24

*Hotel Aquarius, B.V. v. PRT Corp.*, No. 92 Civ. 4498 (MBM), 1992 WL 391264 (S.D.N.Y. Dec. 22, 1992) ............................................................................................. 3, 4

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007) .............................................. 2

*Jillcy Film Enterprises, Inc. v. Home Box Office, Inc.*, 593 F. Supp. 515 (S.D.N.Y. 1984) .......................................................................................................................... 6

*Kosher Provisions, Inc. v. Blue & White Food Prod. Corp.*, No. CV-04-361 (NGG), 2005 WL 1890039 (E.D.N.Y. Aug. 9, 2005) .......................................... 6

*Kershaw v. Nautica S.A. Ltd.*, 885 F. Supp. 617 (S.D.N.Y. 1995) .............................. 14

*Manhattan Motorcars, Inc. v. Automobili Lamborghini*, 244 F.R.D. 204 (S.D.N.Y. 2007) ...................................................................................................................... 9

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ..................................... 13

*Minnesota Mining & Mfg. Co. v. Graham-Field, Inc.*, No. 96 Civ. 3839 (MBM), 1997 WL 166497 (S.D.N.Y. Apr. 9, 1997) ................................................... 18, 22

*Pinnacle Books, Inc. v. Harlequin Enters. Ltd.*, 519 F. Supp. 118 (S.D.N.Y. 1981) ..................... 5

*Saidin v. New York City Dep't of Educ.*, 498 F. Supp. 2d 683 (S.D.N.Y. 2007) ........................... 2

*Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037 (2d Cir. 1980) ................................ 15

*Siradas v. Chase Lincoln First Bank, N.A.*, No. 98 Civ. 4028, 999 WL 787658 (S.D.N.Y. Sept. 30, 1999) ............................................................................................ 7

*TVT Records, v. Island Def Jam Music Group*, 244 F. Supp. 2d 263 (S.D.N.Y. 2003) ...................................................................................................................... 7

*Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175 (2d Cir. 2001) ......................... 18

**TABLE OF AUTHORITIES**
**(continued)**

*Television Events & Mktg., Inc. v. Amcon Distr. Co.*, 484 F. Supp. 2d 1124
    (D. Haw. 2006)........................................................................................ 6

*The Travelers Ins. Co. v. McDermott Inc.*, No. Civ.A. 01-3218, 2003 WL 21999354
    (E.D.La. Aug. 22, 2003)......................................................................... 4

*Vacold LLC and Immunotherapy, Inc. v. Cerami*, No. 00 Civ. 4024 (AGS), 2002
    WL 193157 (S.D.N.Y. Feb. 7, 2002) ..................................................... 2

**STATE CASES**

*Advanced Global Tech. LLC v. Sirius Satellite Radio, Inc.*, 836 N.Y.S.2d 807, 809-
    10 (Sup. Ct., N.Y. Co. 2007)......................................................... 20, 22, 24

*Brown v. Lockwood*, 76 A.D.2d 721, 730 (2d Dep't 1980) ........................... 12

*Cohen v. Houseconnect Realty Corp.*, 289 A.D.2d 277 (2d Dep't 2001) ................... 12

*John R. Loftus, Inc. v. White*, 540 N.Y.S.2d 610 (3d Dep't 1989) ................... 23

*Marks v. City of Seattle*, No. C03-1701, 2003 WL 23024522 (W.D. Wash. Oct. 16,
    2003) ...................................................................................... 12

*McGee & Gelman v. Park View Equities, Inc.*, 187 A.D.2d 1012 (4th Dep't 1993)............... 10, 11

*New Colony Homes, Inc., v. Long Island Prop. Group, LLC*, 803 N.Y.S.2d 615
    (N.Y. App. Div. 2005) ............................................................... 9

*Ocean Side Inst. Indus. v. Superior Laundry*, No. 14024-06, 2007 WL 1175494
    (Sup. Ct., Nassau Co. Mar. 29. 2007) .......................................... 17

*Peartree Assoc., LLC v. Naclerio*, 303 A.D.2d 210 (1st Dep't 2003)............................ 8

*Taussig v. Clipper Group, L.P.*, 13 A.D.3d 166, 167 (1st Dep't 2004) ........................ 9

## TABLE OF AUTHORITIES
### (continued)

### STATUTES

Federal Rule of Civil Procedure 9(b)……………………………….......................1, 12, 13, 14

Federal Rule of Civil Procedure 12(b)(6)……………………………………………………...1, 2, 25

N.Y. C.P.L.R. § 3016(b) ......................................................................................... 12

N.Y. Gen. Oblig. §§ 5-703 ...................................................................................... 8

### TREATISES

96 N.Y. Jur 2d *Specific Performance* § 69 (2007) ....................................................... 10

Defendants Ocean Bay Properties I Limited ("OBI"), Ocean Bay Properties II Limited ("OBII") and British Colonial Development Company ("BCDC" and, collectively with OBI and OBII, the "Contracting Defendants"), by and through their attorneys Weil, Gotshal & Manges, LLP and Wormser, Kiely, Galef & Jacobs LLP, respectfully submit this motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the claims asserted against them in the complaint filed (the "Complaint") by IGY Ocean Bay Properties Limited ("IGY" or "Plaintiff") and Island Global Yachting Ltd. ("IGYL" and, collectively with IGY,  "Plaintiffs").

## PRELIMINARY STATEMENT

This case concerns a failed attempt to reach agreement regarding the development of a marina and attendant facilities in the Commonwealth of the Bahamas, the underlying Purchase Agreement, and IGY's failure to fulfill its obligations that ultimately led to the valid termination of the Purchase Agreement.  See Exhibit B to the Declaration of John T. Morin, dated December 21, 2007 (hereinafter, "Morin Decl.").  IGY alleges that the Contracting Defendants breached the "good faith" and "best efforts" to negotiate provisions in the Purchase Agreement.  As a form of relief, IGY seeks damages and specific performance under the contract.

IGY also asserts several related tort claims, including fraudulent inducement, unfair competition and, along with IGYL, tortious interference with prospective business relations.  All of these claims, however, are flatly inconsistent with the face of the Purchase Agreement and/or constitute vague and conclusory allegations that are insufficient to state a claim under Bell Atl. Corp. v. Twombly.  127 S.Ct. 1955, 1974 (2007).  Moreover, IGY's allegations in support of its fraudulent inducement claim are insufficient under Fed. R. Civ. P. 9(b).  Accordingly, all of Plaintiffs' claims fail as a matter of law, and the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

1

## LEGAL STANDARD

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 127 S.Ct. at 1974. Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> at 1965 (internal citations omitted). Allegations that are mere conclusions of law or unwarranted deductions of fact, however, need not be accepted as true. <u>See</u> <u>Saidin</u> v. <u>New York City Dep't of Educ.</u>, 498 F. Supp. 2d 683, 686 (S.D.N.Y. 2007) (citation omitted). Indeed, plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 127 S.Ct. at 1965. The Second Circuit has interpreted the 'plausibility standard' to mean that enough facts must be alleged to "nudge [plaintiffs'] claims across the line from conceivable to plausible." <u>In re Elevator Antitrust Litig.</u>, 502 F.3d 47, 50 (2d Cir. 2007).[1]

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint as exhibits or incorporated in it by reference. <u>See</u> <u>Cortec Indus. Inc.</u> v. <u>Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991). A court may also consider documents relied upon and integral to the complaint, even if the plaintiffs have not annexed those documents to the complaint. <u>Id.</u>; <u>see also</u> <u>Vacold LLC and Immunotherapy, Inc.</u> v. <u>Cerami</u>, No. 00 Civ. 4024 (AGS), 2002 WL 193157, at *3, (S.D.N.Y. Feb. 7, 2002).

---

[1] The Second Circuit has found that <u>Twombly</u>'s "plausibility standard" can be applied beyond the antitrust context. <u>See</u> <u>ATSI Commc'ns, Inc.</u> v. <u>Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 n.2 (2d Cir. 2007).

**ARGUMENT**

A.  **IGY'S FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT SHOULD BE DISMISSED BECAUSE IGY HAS FAILED TO SUFFICIENTLY ALLEGE THE BREACH OF ANY PROVISION IN THE PURCHASE AGREEMENT**

Under New York law, in order to assert a claim for breach of contract, plaintiff must allege:  (1) the existence of a valid and enforceable agreement between Plaintiff and defendants; (2) due performance by Plaintiff; (3) that the defendants breached the agreement by failing to perform its obligations; (4) and resulting damages to the Plaintiff.  Hotel Aquarius, B.V. v. PRT Corp., No. 92 Civ. 4498 (MBM), 1992 WL 391264, at *3 (S.D.N.Y. Dec. 22, 1992).

1.  *The Provisions Allegedly Breached Do Not Apply to BCDC*

Plaintiff alleges that BCDC, as well as the other Contracting Defendants, breached the "good faith" and "commercially reasonable efforts" provisions in Sections 5.05 and 7.03 of the Purchase Agreement.  See Compl. ¶ 66; see also Exhibit B.  Section 5.10 of the Purchase Agreement,[2] however, explicitly states that BCDC is not a "Seller Entity" with regard to, and is therefore not subject to, Section 5.05, and further provides that Section 7.03 only applies to BCDC "as it relates to the Parking Lot Plan and paragraphs 8 and 11 of Schedule A," which, in turn, covers the parties' agreement to negotiate and discuss in the future "cross easement and signage rights" and the "Parking Lot Plan."  Moreover, BCDC was explicitly excluded from the other relevant provisions in the Purchase Agreement that discussed the negotiation, execution and delivery of the Amended and Restated Operating Agreement ("Shareholders' Agreement").

---

[2] Under Section 5.10, "BCD shall be deemed a "Seller Entity" and included within the meaning of "Seller" only for purposes of the following provisions of this Agreement": Sections 2.05(h), (i), and (m); Sections 3.01-3.04 and 3.14, "provided that BCD shall be deemed to make such representations and warranties only with respect to itself and not the other Seller Entities"; clause (iii) of Section 4.06; Sections 5.02, 5.04 and 5.07; Sections 7.01(l) and (m) and 7.02(d) and (e); Section 7.03, "but only insofar as it relates to the Parking Lot Plan and paragraphs 8 and 11 of Schedule A attached hereto"; Article X, and items 8 and 11 of Schedule A.

Section 2.05(c), which obligates the "Seller" to "deliver or cause to be delivered to Purchaser" at Closing "an executed counterpart of the [Shareholders' Agreement]" for example, is not included in the list of Sections that apply to BCDC.  See Purchase Agreement, § 5.10.

Similarly, Sections 7.01(c) and 7.02(c), which set forth "Conditions to Obligations" by Purchaser and Seller and which require that the "Purchaser and Seller Member shall have executed" the Shareholders' Agreement, do not apply to BCDC.  As BCDC was not a "party" to the provisions IGY alleges were breached, IGY's breach of contract claim against BCDC should be dismissed.[3]  See Hotel Aquarius, B.V., 1992 WL 391264, at *6 ("if an entity is not a party to a contract, no valid breach of contract claim exists against that entity"); see e.g., The Travelers Ins. Co. v. McDermott Inc., No. Civ.A. 01-3218, 2003 WL 21999354, at *15 (E.D.La. Aug. 22, 2003) (noting that "the drafters specifically identified the scope of the entities to which a particular provision applied" in determining who was a party to the agreement).

   2.   *IGY Has Failed To Plead The Breach Of Any Provision In The Purchase Agreement Because Sections 5.05 and 7.03 Of The Purchase Agreement Are Unenforceable As A Matter Of Law*

The gravamen of IGY's breach of contract claim is that Contracting Defendants "breached the Agreement by refusing to agree upon the final Shareholders' Agreement."  Compl. ¶ 64.  There are, however, no provisions in the Purchase Agreement that obligate Contracting Defendants to "agree upon" or execute a final Shareholders' Agreement, and certainly none providing that failure to do so would constitute a breach.  See Purchase Agreement, *passim*.  IGY attempts to obscure the absence of such a provision by citing to Sections 5.05 and 7.03 and

---

[3] It is undisputed that IGYL was not a party to the Purchase Agreement and is not a party to the breach of contract claim asserted in the Complaint.  Indeed, the Complaint alleges only two causes of action by IGYL:  tortious interference with prospective business relations against Adurion and tortious interference with prospective business relations against all defendants.

4

conclusorily alleging that Contracting Defendants breached these provisions by "failing and refusing to approve the Shareholders' Agreement."  Compl. ¶ 66.  Sections 5.05 and 7.03 of the Purchase Agreement, however, only require Contracting Defendants to exercise "good faith" and "commercially reasonable" efforts to negotiate and "agree upon" the final terms of the Shareholders' Agreement.  See Astor Holdings, Inc. v. Roski, 325 F. Supp. 2d 251, 263-64 (S.D.N.Y. 2003) (holding that defendant's "failure to actually execute the . . . settlement agreement, or any other draft, could not be a breach of the Venture Agreement since the Agreement only requires good-faith negotiation, not the signing of any particular agreement").

The central issue in cases that analyze "good faith" and "best effort" provisions is whether these provisions are directed towards a concrete goal or directed towards the *negotiation* of a future agreement.  See Pinnacle Books, Inc. v. Harlequin Enters. Ltd., 519 F.Supp. 118, 122 (S.D.N.Y. 1981) ("The performance required by a contract to negotiate with best efforts, unlike the performance required by a distribution contract or a patent assignment, simply cannot be ascertained from the circumstances . . . [as] the very nature of contract negotiations renders it impossible to determine whether the parties have used their "best efforts" to reach a new agreement").  In Astor Holdings, Inc., for example, the court found that provisions which require "good faith" negotiations, like Sections 5.05 and 7.03, can be considered a "binding preliminary commitment" under New York law, and held that, "[u]nder such a commitment, the parties have no right to demand performance of the ultimate transaction."  325 F. Supp. 2d at 264.

Courts have, however, gone a step further, finding that such "good faith" and "best efforts" provisions are even more vague and indefinite than "binding preliminary commitments"

or unenforceable "agreements to agree."[4]  In <u>Candid Prods.</u> v. <u>Int'l Skating Union</u>, for example, the court found unenforceable as a matter of law a contract provision that a defendant "will not negotiate any further contract [ ] without first negotiating in good faith with [plaintiff]."  530 F.Supp. 1330, 1332 (S.D.N.Y. 1982).  The court noted that "[a]n agreement to negotiate in good faith is even more vague than an agreement to agree."  <u>Id.</u> at 1337.  Calling an agreement to negotiate in good faith "amorphous and nebulous," the court stated that such provisions "implicate[] so many factors that are themselves indefinite and uncertain that the intent of the parties can only be fathomed by conjecture and surmise."  <u>Id.</u>  Similarly, in <u>Jillcy Film Enters.</u> v. <u>Home Box Office</u>, the court granted defendant's motion to dismiss after finding vague and unenforceable a provision requiring the parties to "negotiate exclusively in good faith with respect to the terms and provisions relating to the distribution, exhibition or other exploitation of the Documentary."  593 F.Supp. 515 (S.D.N.Y. 1984); <u>see</u> <u>e.g.</u>, <u>Television Events & Mktg., Inc.</u> v. <u>Amcon Distr. Co.</u>, 484 F. Supp. 2d 1124, 1132 (D. Haw. 2006) (distinguishing contracts requiring "best efforts" in the negotiation of a deal, from agreements which control the production and distribution of products, where the efforts can be measured more readily).

    As Sections 5.05 and 7.03 are unenforceable as a matter of law, IGY has failed to plead, and cannot plead, any unlawful breach that might support its claims, and its breach of contract claim should be dismissed.[5]

---

[4] The seminal case in this area, <u>Adjustrite Sys. Inc.</u> v. <u>GAB Bus. Serv., Inc.</u>, held that "binding preliminary commitments" are created when the parties accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement.  145 F.3d 543, 548 (2d Cir. 1998) (internal citations and quotations omitted).

[5] IGY also conclusorily alleges that OBI, OBII and BCDC violated the implied covenant of good faith and fair dealing.  <u>See</u> Compl. ¶ 66.  New York law, however, "does not recognize a separate cause of action for breach of the implied covenant of good faith and a breach of contract on the same facts."  <u>Kosher Provisions, Inc.</u> v. <u>Blue & White Food Prod. Corp.</u>, No. CV-04-361 (NGG)

3.   <u>*IGY Does Not Sufficiently Allege That It Satisfied Its Closing Conditions Under the Purchase Agreement Within The Outside Closing Date And Thus Seller's Alleged Failure To Use Best Efforts Is Irrelevant*</u>

IGY's breach of contract claim should also be dismissed because it has not alleged -- and cannot allege -- that it met various obligations it was required to undertake before the closing of the Purchase Agreement.  IGY repeatedly claims that the Shareholders' Agreement was the "*sine qua non*" of the closing,  (Compl. ¶¶ 3, 9, 30, 52) thereby implying that the Shareholders' Agreement was the sole reason that the Purchase Agreement never closed.  This, however, is belied by the Purchase Agreement which, on its face, indicates that the execution of the Shareholders' Agreement was simply one of many Closing conditions and a document to be delivered at Closing.  <u>See</u> Purchase Agreement, §§ 7.01, 7.02, 2.05 and 2.06.

a.   *IGY Has Not Alleged That It Was Granted Extensions Of The Outside Closing Date In A Written Instrument As Required By the Purchase Agreement and New York's Statute of Frauds*

Though the Purchase Agreement defines the Outside Closing Date as September 30, 2006, and contemplates the possibility that Plaintiff could obtain two extensions of thirty days each thereby pushing the Outside Closing Date to November 29, 2006,[6] IGY claims that it requested and received from Contracting Defendants an *additional* extension to January 31, 2007 and further, that it requested a *second additional* extension, this time to June 30, 2007, which Contracting Defendants allegedly "did not refuse."  Compl. ¶ 46.  However, the Purchase

---

(SAC), 2005 WL 1890039, at *3 (E.D.N.Y. Aug. 9, 2005); <u>TVT Records</u>, v. <u>Island Def Jam Music Group</u>, 244 F. Supp. 2d 263, 277 (S.D.N.Y. 2003) ("a claim for breach of the covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate of the underlying contract").  As IGY has made no allegations in support of its duty of good faith claim different or separate from its breach of contract claim, this must be dismissed.  <u>See</u> <u>Siradas</u> v. <u>Chase Lincoln First Bank, N.A.</u>, No. 98 Civ. 4028, 999 WL 787658, at *6 (S.D.N.Y. Sept. 30, 1999).

[6] <u>See</u> Purchase Agreement, at p. 5.

7

Agreement, under its clear terms, specified that any extension of time to perform under the agreement "shall be valid only if set forth in an instrument in writing signed by the party to be bound thereby." Purchase Agreement § 10.09.  IGY has not, and cannot, allege that it received, in writing, an agreement to extend the Closing Date either to January 31, 2007 or to June 30, 2007.[7]  Even if Sections 10.08 and 10.09 did not require a written amendment, such a writing is required under the New York Statute of Frauds, which provides that contracts involving the sale of real land must be in writing.  See N.Y. GEN. OBLIG. §§ 5-703.

IGY does not allege that either the January 31, 2007 or June 30, 2007 extensions were set forth in written instruments signed by the party to be bound thereby.  Under either the terms of the Purchase Agreement or under New York's Statute of Frauds, IGY's failure to allege that Contracting Defendants agreed to extend the Outside Closing Date in writing would be fatal to their claim that these extensions were valid and enforceable.  See Peartree Assoc., LLC v. Naclerio, 303 A.D.2d 210, 211 (1st Dep't 2003).

> b. *Regardless Of When The Closing Date Passed, IGY Does Not Allege That It Met All Of Its Closing Conditions Within That Period*

Even assuming that the Purchase Agreement was extended to January 31, 2007, or even June 30, 2007, IGY does not, and cannot, allege that it had performed all necessary pre-closing-obligations by either of these two dates.  Though the Complaint implies that the failure to execute the Shareholder's Agreement was the sole obstacle to closing, this is contradicted by the Purchase Agreement.  Specifically, under the terms of the Purchase Agreement, IGY had numerous specific conditions precedent that it needed to meet before Closing could occur.  These

---

[7] Plaintiff IGY also implies that the Court should find that the agreement was extended until June 30, 2007 because Sellers "did not refuse" said extension.  This argument must be dismissed. IGY not only fails to assert that there was a "writing" associated with this extension but, more importantly, fails to allege any "agreement" whatsoever.

conditions included, *inter alia*, the execution of the Shareholders' Agreement, the execution of a

Parking Lot Management Agreement, that IGY complete an environmental assessment report

and that the parties to the Purchase Agreement shall have mutually agreed upon: (i) a "Parking

Lot Plan" and (ii) recordable cross-easements.  See Purchase Agreement § 7.01.  IGY does not

allege compliance with any of these conditions.

In short, Plaintiffs' allegation that the Shareholder's Agreement was the "*sine qua non*"

of the Purchase Agreement is flatly contradicted by the Purchase Agreement and renders IGY's

allegation that it had "at all times duly performed all of its obligations pursuant to the Purchase

Agreement" meaningless.  Compl. ¶ 63.  See Manhattan Motorcars, Inc. v. Automobili

Lamborghini, 244 F.R.D. 204, 213 (S.D.N.Y. 2007) ("At the motion to dismiss stage, where a

plaintiff's factual allegations or legal conclusions are flatly contradicted by documentary

evidence, they are not presumed to be true, or even accorded favorable inference, in the context

of a breach of contract action.") (citing Taussig v. Clipper Group, L.P., 13 A.D.3d 166, 167 (1st

Dep't 2004)).  IGY does not sufficiently allege that it complied with all of its conditions to

closing.  Under New York law, the non-performance of such obligations would constitute a

material breach of the Purchase Agreement.  See New Colony Homes, Inc., v. Long Island Prop.

Group, LLC, 803 N.Y.S.2d 615, 616 (N.Y. App. Div. 2005)  (under New York law, "where time

is of the essence, performance on the specified date is a material element of the contract, and

failure to perform on that date constitutes [] a material breach of contract").

B.  **IGY'S SECOND "CAUSE OF ACTION" FOR SPECIFIC PERFORMANCE
    SHOULD BE DISMISSED**

In its second "Cause of Action" for specific performance, IGY requests that the Court

order Contracting Defendants to "approve the Shareholders' Agreement and convey the Property

pursuant to the terms of the Purchase Agreement." Compl. ¶ 74. In order to obtain specific performance on a contract for the sale of real estate, the plaintiff must establish that (1) it performed substantially all of its obligations under the contract, (2) the defendant failed or refused to close and that (3) plaintiff does not have an adequate remedy at law. See 96 N.Y. Jur 2d *Specific Performance* § 69 (2007).

Plaintiffs' "cause of action" for specific performance, however, is really a request for a particular contract remedy, and therefore, should be dismissed for the same reasons as the breach of contract claim, as articulated above. See *supra* section A; see also McGee & Gelman v. Park View Equities, Inc., 187 A.D.2d 1012, 1012 (4th Dep't 1993) ("A promise to negotiate in good faith is a mere promise to agree which is insufficiently definite to be enforceable … by the extraordinary remedy of specific performance").

Even if the Court were to find that IGY sufficiently alleged both the existence of a valid contract and that IGY performed its obligation under the Purchase Agreement, the Court should still deny IGY's request for specific performance. IGY's assertion that it "had no adequate remedy at law" because the land in question was unique and that it is the sole site in Nassau suitable for the construction of such a marina is belied by IGY's other allegations that it would have been able to "develop a marina on another site," or complete a "similar Project in the Bahamas." Compl. ¶¶ 103, 105. IGY's inability to allege that it does not have an adequate remedy at law warrants dismissal of this cause of action. Plaintiffs themselves admit that the land in question is not unique and that other land is available in Nassau that could support their desire to build a marina.

Lastly, in seeking specific performance, IGY is specifically asking the Court to compel Contracting Defendants to agree to the terms of the form Shareholders' Agreement contemplated

in the Purchase Agreement.  The Shareholders' Agreement, however, was not finalized at the time of the execution of the Purchase Agreement.  Rather, as discussed above, the portion of the Purchase Agreement concerning the Shareholder's Agreement was a mere agreement to agree.  See Purchase Agreement, §§ 7.01(c), 7.02(c), 7.03.  Specific performance is not a permissible remedy for an agreement to agree.  See McGee & Gelman, 187 A.D.2d at 1013.  Accordingly, the Court should also dismiss the Second Cause of Action because compelling specific performance based on a yet-to-be-agreed-upon Shareholders' Agreement would be improper as a matter of law.

## C.  **IGY'S FIFTH CAUSE OF ACTION CLAIMING FRAUDULENT INDUCEMENT SHOULD BE DISMISSED**

In its Fifth Cause of Action, IGY asserts a claim for fraudulent inducement based on statements allegedly made by defendant George Allen, purportedly "as Agent of the Sellers," regarding the future intent of Adurion, a non-signatory and non-party to the Purchase Agreement.  See Compl. ¶ 90.  Specifically, IGY alleges that "[p]ursuant to Section 10.07 of the Purchase Agreement," IGY's consent was required "before the Sellers could assign the Purchase Agreement to another party."  Compl. ¶ 42.  BCDC allegedly requested that IGY "consent to the assignment of some portion of [BCDC's] interest to Adurion."  Id.  IGY claims that it was fraudulently induced by "all defendants" to consent to this purported assignment by defendant Allen, who "on behalf of the Sellers specifically assured IGY that Adurion intended to cooperate in closing the transaction in accordance with the Purchase Agreement."  Compl. ¶ 43.  Such cooperation by Adurion allegedly included approval of the draft Shareholders' Agreement, which had not been executed by the parties.  As discussed below, however, IGY's claim is based entirely on a premise that is plainly inconsistent with the Purchase Agreement, namely, that the

11

"assignment" it was induced to consent to required its consent.  Further, IGY's fraudulent

inducement claim fails to meet the "heightened" pleading standards required under Federal Rule

of Civil Procedure 9(b) which requires that the circumstances constituting fraud be "stated with

particularity," and also fails to sufficiently allege the various elements of the claim.[8]  For these

reasons, IGY's claim against the Contracting Defendants should be dismissed.

In order to assert a claim for fraudulent inducement, Plaintiff must allege: "(1) that the

defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to

be false by the defendant, (5) that the representation was made for the purpose of inducing the

other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its

falsity (8) to his injury."  See Brown v. Lockwood, 76 A.D.2d 721, 730 (2d Dep't 1980); see also

Brownstone Inv. Group v. Levey, 468 F. Supp. 2d 654, 658 (S.D.N.Y. 2007); Cohen v.

Houseconnect Realty Corp., 289 A.D.2d 277, 278, (2d Dep't 2001).

1. *The Fraudulent Inducement Claim Should Be Dismissed Because IGY Has Not Shown
That It Relied on the Misrepresentation Of A Material Fact*

As a threshold matter, IGY's fraudulent inducement claim is based on an incorrect factual

premise, as Section 10.07 of the Purchase Agreement only requires IGY's consent when there is

an *assignment of the Purchase Agreement* by the Contracting Defendants to a third-party.  See

Purchase Agreement, § 10.07 ("Seller may, with the prior written consent of Purchaser, which

consent shall not be unreasonably conditioned, withheld or delayed, assign this Agreement to a

---

[8] As the sufficiency of pleadings is procedural, rather than substantive, Federal Law, and not
New York law applies when analyzing whether the complaint is well-pled.  See, e.g., Marks v.
City of Seattle, No. C03-1701, 2003 WL 23024522, at *2 (W.D. Wash. Oct. 16, 2003) (after
removal, "federal law, not state law, governs with what specificity Plaintiff must plead in order
to survive a 12(b)(6) motion"). Even assuming that New York law applied, the result would be
the same as the standard for pleading fraud under N.Y. C.P.L.R. § 3016(b), which also requires
that, where fraud is alleged, "the circumstances constituting the wrong shall be stated in detail."

party that agrees to acquire the BC Hotel").  IGY itself alleges that it was <u>only</u> asked to "consent to the assignment of *some portion* of [BCDC's] *interest* to ACL." Compl. ¶ 42 (emphasis added). IGY has not alleged, and cannot allege, that it was asked to consent to the *assignment of the Purchase Agreement* as required under Section 10.07.  As such, IGY cannot allege that it was induced to do anything <u>material</u> in reliance on Allen's alleged misrepresentations.  This claim, therefore, should be dismissed as a matter of law.[9]

Additionally, even accepting that IGY's consent was required and that Allen's misrepresentations related to a material fact, this cause of action still fails as IGY cannot allege that it <u>reasonably</u> relied on Allen's misrepresentations.  Plaintiff IGY does not claim that Allen represented, or held himself out as a representative of, Adurion.  Absent some belief that Allen had authority to speak on Adurion's behalf, it would not be reasonable or justifiable for IGY to rely on any statement that Allen made with respect to Adurion's future intentions.

    2.   *<u>IGY Fails to Allege the Circumstances Constituting Fraud With Particularity</u>*

IGY's generalized accusations regarding allegedly fraudulent statements made by Allen, as representative of the Contracting Defendants, are insufficient under Federal Rule of Civil Procedure 9(b).  Rule 9(b) requires that, when fraud is alleged, "the circumstances constituting fraud … shall be stated with particularity."  FED. R. CIV. P. 9(b).   In the Second Circuit, a complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statement was made, and (4) explain why the statements were fraudulent."  <u>See</u> <u>Mills</u> v. <u>Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993); <u>Brownstone Inv. Group</u>, 468 F. Supp. 2d at 658-659.  Where knowledge of

---

[9] There are no allegations in the Complaint that any entity except OBI, OBII and BCDC became "a party to" the Purchase Agreement.  Indeed, Plaintiff IGY does not allege that any such assignment was completed.

the circumstances must be pled, the plaintiff may aver such knowledge generally. FED. R. CIV. P. 9(b). However, where knowledge is generally averred, "plaintiffs must still plead the events which they claim give rise to an inference of knowledge." Kershaw v. Nautica S.A. Ltd., 885 F.Supp. 617, 621 (S.D.N.Y. 1995).

IGY alleges that, in order to obtain IGY's "consent to the assignment of some portion of British Colonial's interest to Adurion," Allen told an IGY representative that "Adurion intended to honor the Sellers' obligations under the Purchase Agreement" and that "Adurion would stand by the transaction on the terms already agreed upon." Compl. ¶ 90. Further, IGY asserts that Allen told the IGY representative that "Adurion intended to proceed to closing the transaction which had been negotiated, that Adurion's involvement would not block the closing, and that Adurion intended to honor the Sellers' obligations under the Purchase Agreement, including approving the Shareholders' Agreement." Id. IGY alleges that Allen made this statement in "early December 2006" and that Allen "reaffirmed that misrepresentation in numerous telephone calls and in person meetings in November and December 2006." Compl. ¶ 90. In sum, the Complaint conveys only that Allen spoke to an unnamed representative of IGY, in unnamed places, by phone or in person during a two month span of November and December 2006.

Such averments are insufficient to meet the heightened pleading standards of Fed. R. Civ. P. 9(b). In particular, these allegations fail to provide the Contracting Defendants with sufficient notice of the time and place these statements were made and further fail to sufficiently identify what Allen actually said. See Appalachian Enters., Inc., 2004 WL 2813121, at *8 ("Rule 9(b) cannot be satisfied merely by attributing the alleged misstatements to all the defendants.") (citation omitted).

D. **IGY'S SIXTH CAUSE OF ACTION FOR UNFAIR COMPETITION IS INSUFFICIENTLY PLED AND SHOULD BE DISMISSED**

IGY Sixth Cause of Action purports to assert an unfair competition claim against "all defendants" based entirely on the unsupported allegation that Contracting Defendants misappropriated IGY's work product and intends to use that work product to complete the project with a different partner.  See Compl. ¶ 99.  Under New York law, in addition to allegations regarding acts or omissions by defendants that proximately caused a misappropriation, a properly pled unfair competition claim must also sufficiently describe the property or benefit misappropriated.  See Commercial Data Servers, Inc. v. Int'l Bus. Machs. Corp., 166 F. Supp.2d 891, 894 (S.D.N.Y. 2001).  Plaintiff must also show that the misappropriation was done in "bad faith."  See Bulger v. Royal Doulton, PLC, No. 05 Civ. 7709(DAB), 2006 WL 3771016, at *8 (S.D.N.Y. Dec. 19, 2006); Saratoga Vichy Spring Co., Inc. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980).  The gravamen of an unfair competition claim is "the bad faith misappropriation of a commercial advantage belonging to another … by exploitation of proprietary information or trade secrets."  Am. Fin. Int'l Group-Asia, L.L.C. v. Bennett, No. 05 Civ. 8988 (GEL), 2007 WL 1732427, at *4 (S.D.N.Y. Jun. 14, 2007).

IGY's hodgepodge of allegations in support of its "unfair competition" claim fail to identify what property or benefit was allegedly misappropriated.  Citing Section 5.02, "the confidentiality provisions of [the] Purchase Agreement," IGY alleges that Contracting Defendants disclosed to unknown third parties "confidential information, including analyses, compilations, studies or other documents prepared" and "upon information and belief," were planning to use this information to help Contracting Defendants complete the contemplated project with a different partner.  Compl. ¶¶ 34, 97.  The Purchase Agreement, however, clarifies

15

that the "confidential information" referred to in Section 5.02 refers to information "furnished to Seller about Purchaser, its Affiliates and the IGY Unaudited Financials," which, in turn, includes the IGY Partnership Agreement and an unaudited balance sheet of IGY.  See Purchase Agreement, §§ 4.05 and 5.02.  None of the documents protected by the confidentiality provisions of Section 5.02 involve the "reports, studies, analyses and design plans" IGY alleges Contracting Defendants misappropriated to use in building a marina.  See Compl. ¶ 98.

    To the extent IGY intended to allege that Contracting Defendants misappropriated the "reports, studies and analysis" contemplated in Section 2.02(b) of the Purchase Agreement,[10] they still fail to allege a claim for misappropriation.  First, as Section 2.02(b) unequivocally explains, IGY was to expend in excess of $200,000.00 in conducting a due diligence investigation and preparing various reports and studies as part of its payment to Contracting Defendants in consideration for the underlying property transfer.  Under the Purchase Agreement, therefore, these "reports, studies and analysis" belong to Contracting Defendants. Section 2.02(b) explicitly provides that this expenditure is an amount "Purchaser shall be deemed to have made as an additional deposit (the "Credited Deposit" and together with the Cash Deposit, the "Deposit").[11]  Contracting Defendants clearly cannot misappropriate their own property.  See, e.g., Atari, Inc. v. Games, Inc., No. 04 Civ. 3723 (JSR), 2005 WL 447503, at * 3

---

[10] Indeed, IGY's Complaint repeats, word for word, many of the items listed in Section 2.02 of the Purchase Agreement, including "conducting due diligence investigations, and engaging third parties to prepare various reports, studies and analysis."  Compare Purchase Agreement at 9, with Compl. ¶ 98.

[11] The Purchase Agreement clearly contemplates that these Property Reports belong to the Seller. The termination provisions in Section 9.02 provide that, if the Agreement is terminated by the Seller pursuant to Section 9.01(b), "the Property Reports shall be immediately vested in Seller." Purchase Agreement at 28.  Further, if the Agreement is terminated for any reason other than pursuant to Section 9.01(b), the only thing that is returned to IGY is the Cash Deposit, and not the Property Reports.  See Purchase Agreement, Section 9.02(b).

(S.D.N.Y. Feb. 24, 2005) (holding that a claim for unfair competition requires the misappropriation, in bad faith, of a commercial advantage *belonging to another*).

Even if IGY could allege that the information contained in these reports, studies, and analyses was their property, IGY has asserted no allegations to show how any of the possible pieces of information allegedly misappropriated conveyed some "commercial advantage."  As discussed above, the information covered under the confidentiality provisions of Section 5.02 focused solely on IGY-specific financial information unrelated to the property.  Further, even if the allegedly misappropriated property related to the information discussed in Section 2.02(b), as opposed to the information in Section 5.02, the reports, studies and analysis concerned "the Property and *its suitability for Purchaser's intended purposes.*"  <u>See</u> Purchase Agreement, Section 2.02, at 9 (emphasis added).  There was, therefore, no commercial advantage for *anyone* except IGY in the information contained in the reports, studies and analyses.

IGY also appears to be alleging that Contracting Defendants misappropriated the "fruitful results of [IGY's] negotiations with the Bahamian Government."  Compl. ¶ 99.  As an initial matter, the Complaint is devoid of any allegations of what methods or practices Contracting Defendants undertook to misappropriate IGY's "fruitful results."  Absent such allegations, IGY's claim must be dismissed.  <u>See</u> <u>Ocean Side Inst. Indus.</u> v. <u>Superior Laundry</u>, No. 14024-06, 2007 WL 1175494, at *3 (Sup. Ct., Nassau Co. Mar. 29. 2007) (dismissing claim because plaintiff "does not allege what practice or activity of [defendant] constitutes unfair competition").

Even if IGY sufficiently alleged the unfair activities Contracting Defendants undertook, IGY has failed to allege that it even has a property interest in the "fruitful results."  Although the law of unfair competition is "a broad and flexible doctrine," it is not so flexible as to protect as intangible a property right as the "fruitful results of negotiations."  Compl. ¶ 99.  Indeed, it is

axiomatic that IGY does not, and could not, assert an exclusive or proprietary right to negotiate with the Bahamian Government.  See e.g., Atari, 2005 WL 447503, at *3 (finding that the alleged misappropriation of "services" will not support an unfair competition claim); Commercial Data Servers, 166 F. Supp.2d at 895 (dismissing unfair competition claim where plaintiff "failed to particularize its protected property rights in any of the purported 'innovations' it alleges" were misappropriated); Minnesota Mining & Mfg. Co. v. Graham-Field, Inc., No. 96 Civ. 3839 (MBM), 1997 WL 166497, at *6 (holding that allegations of misappropriation of "market share" are insufficient to state an unfair competition claim).  Plaintiffs' allegations are simply insufficient to "nudge its claims across the line from conceivable to plausible." Twombly, 127 S.Ct. at 1974.  As the fruitful results of a negotiation are not property rights capable of being misappropriated, Plaintiffs' cause of action for unfair competition should be dismissed.  See Telecom Int'l America, Ltd. v. AT&T Corp., 280 F.3d 175 (2d Cir. 2001) (dismissing unfair competition claim where the complaint fails to allege "some appropriation of an idea or knowledge in which [plaintiff] had a property interest or a contractual arrangement creating such an interest").

Lastly, even if the Court were to determine that Plaintiff IGY sufficiently alleged (1) the actions taken by Contracting Defendants in furtherance of their misappropriation, and (2) some tangible property or benefit that was misappropriated, its claim should still be dismissed for failing to assert facts to show that Contracting Defendants acted in "bad faith."  Although Plaintiffs allege that "Defendants … have deliberately and willfully, by unfair and improper means, and in violation of their contractual and confidential obligations, misappropriated the labor and expenditures of IGY," Compl. ¶ 98, merely stating legal "buzzwords" without providing any factual basis for such allegations is insufficient to plead the existence of "bad

18

faith."  See Bulger v. Royal Doulton, PLC, No. 05 Civ. 7709 (DAB), 2006 WL 3771016, at *8

(S.D.N.Y. Dec. 19, 2006) (holding that plaintiff's allegations of bad faith in connection with a

claim of unfair competition were insufficient where plaintiffs conclusorily alleged that

"Defendants' conduct was willful, malicious, oppressive, and committed with actual or

constructive knowledge, in gross derogation of Plaintiff's rights and privileges"); see Twombly,

127 S.Ct. at 1964-65 (holding that in order to survive a motion under 12(b)(6), a pleading must

provide more "than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do").

     In short, IGY's allegations of misappropriation are "so vague that it is difficult to say

what behavior they are based on" and should be dismissed.  Am. Int'l Group-Asia, LLC, 2007

WL 1732427, at *4.  This Court should not permit IGY to make conclusory, insufficient and – in

light of the provisions in the Purchase Agreement – blatantly incorrect allegations.  Accordingly,

IGY's unfair competition claim should be dismissed.

E.  **IGY AND IGYL FAIL TO ALLEGE FACTS SUFFICIENT TO SUPPORT THEIR SEVENTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS CLAIM**

     Plaintiffs IGYL and IGY allege that all of the defendants tortiously interfered with their

prospective business relations with the Bahamian government.  Under New York law, to assert a

claim for tortious interference with business relations, Plaintiffs must assert (1) a business

relationship with a third party; (2) that defendants knew of and interfered with this relationship;

(3) that defendants acted solely out of malice, or used dishonest, unfair, or improper means; and

(4) that defendants' interference caused injury to the relationship.  See Exportaciones Del Futuro

S.A. De C.V. v. Iconix Brand Group Inc., No. 07 Civ. 4145(LBS), 2007 WL 3306699, at *2

(S.D.N.Y. Nov. 6, 2007 ); Advanced Global Tech. LLC v. Sirius Satellite Radio, Inc., 836 N.Y.S.2d 807, 810 (Sup. Ct., N.Y. Co. 2007).

The Complaint appears to assert two alternative claims based on the same set of factual circumstances. The first appears to claim that "but for" defendants' alleged tortious conduct, the Bahamian government would have issued a "Heads of Agreement" and the transaction, despite defendants' protests, would have closed. The second appears to claim that "but for" the same alleged tortious conduct, the Bahamian government "would have granted IGY and IGYL the license based on the negotiations already conducted to develop a marina on another site." Compl. ¶ 103. These claims, like all of Plaintiffs' other causes of action, are, as a matter of law, factually insufficient.

First, Plaintiffs' claims should be dismissed for failing to specifically allege the "tortious conduct" that caused the alleged interference. Under New York law, Plaintiffs are required to allege some specific action taken by each defendant that interfered with Plaintiffs' purported business relationship with the Bahamian government. Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc., 515 F. Supp. 2d 298, 317 (S.D.N.Y. Aug. 29, 2007); see also Black Radio Network, Inc. v. NYNEX Corp., No. 96 Civ. 4138(DC), 2000 WL 64874, at *4 (S.D.N.Y. Jan. 25, 2000). Plaintiffs' Complaint, however, is replete with nothing but conclusory and unplausible allegations. Plaintiffs allege, for example, that "Defendants' interference in IGY's established business relationship with the Bahamian government has caused IGY harm" and that "all Defendants prevented the business relationship between IGY and the Bahamian Government." See e.g., Compl. ¶¶ 59, 60. These insufficient assertions fail to identify defendants' alleged tortious conduct. Tellingly, Plaintiffs fail to even mention any specific

defendant in the allegations supporting this specious claim, instead lumping them all together and referring to them collectively as "Defendants." See Compl. ¶¶ 101-107.

Even if the Court were to assume, for the purposes of this motion, that the alleged tortious conduct related to defendants OBI, OBII and BCDC's purported refusal to execute the Shareholders' Agreement, and the exercise of their right, under the Purchase Agreement, to seek to further negotiate the terms of the Shareholders' Agreement, this argument would still fail as a matter of law.  In New York, a plaintiff must allege that the defendant directed its activity towards a third party, here the Bahamian government, in order to convince that third party not to enter into a business relationship with the plaintiff.  Black Radio Network, Inc. 2000 WL 64874 at * 4 (dismissing claim because plaintiff fails to assert that defendants directed any conduct towards plaintiff's customers or prospective customers); see also Am. Bldg., 515 F.Supp.2d at 317 ("the conduct on which these tort claims is based must be directed at the part with whom plaintiff has or seeks to have a business relationship").  Plaintiffs have not alleged here or anywhere else in the Complaint that any "tortious" conduct was specifically directed at the Bahamian Government.  See Compl. passim.

Second, Plaintiffs have also failed to sufficiently allege the existence of any "business relationship." Gianni Versace, S.p.A. v. Versace, No. 01 Civ. 9645 PKL THK, 2003 WL 470340, at *2 (S.D.N.Y. Feb. 25, 2003) (holding the counterclaim fails to meet pleading requirements where there is no attempt to "allege a specific business relationship" with which counterdefendant interfered).  Plaintiffs repeatedly refer to a "Heads of Agreement" ("HOA") they negotiated with the Bahamian government which would have allegedly culminated in a

closing of the transaction contemplated in the Purchase Agreement.[12]  The HOA, however, is

nothing more than a "license" to consummate the transaction contemplated in the Purchase

Agreement.  See Compl. ¶ 30 ("the Heads of Agreement would be, in effect, a license agreement

between IGY and the Bahamian Government, permitting the sale of the Property to IGY,

approving the Project, and permitting IGY to use the seabed adjacent to the Property").  It

confers no rights above, beyond or separate from those contemplated in the Purchase Agreement

and, because of its site-specific nature, most certainly does not grant Plaintiffs a "license" to

develop a marina on another site.  In this sense, the Heads of Agreement is nothing more than a

zoning permit that sets forth the authorized scope of the project and the obligations of the

developer and the Bahamian Government.  It is not a "business relationship" sufficient to support

a prospective business relationship claim.  See Minnesota Mining and Mfg. Co., 1997 WL

166497, at *7  (S.D.N.Y. Apr. 9, 1997) (claim dismissed where counterclaimant failed to allege a

"particular customer relationship" with which counterdefendant interfered).

   Third, Plaintiffs have insufficiently alleged that any of these tortious acts were

undertaken "with the sole purpose of harming the plaintiff or that such conduct was wrongful or

improper independent of the interference allegedly caused thereby." Advanced Global Tech.

LLC, 836 N.Y.S.2d at 809-10.  Plaintiffs' conclusory assertions that "Defendants acted in bad

faith either with the sole purpose to harm IGY and IGYL or with wrongful, dishonest, unfair and

improper means" are insufficient to state a claim for tortious interference with business

---

[12] This allegation puts the proverbial cart before the horse.  A clear reading of the Purchase
Agreement reveals that the Heads of Agreement is nothing more than a "Closing" document, to
be provided by Plaintiff IGY to each of OBI, OBII and BCDC upon closing.  There is nothing in
the Purchase Agreement which supports Plaintiffs' jumbled contention that obtaining a Heads of
Agreement would have culminated in the closing of the transaction.

relations.[13]  See Exportaciones Del Futuro S.A. De C.V., 2007 WL 3306699, at *2 (citation

omitted) (noting that "simply reciting conclusory words like 'dishonest, unfair, or improper

means,'" is insufficient to properly allege tortious interference with business relations); see also

Gianni Versace, S.p.A., 2003 WL 470340, at *2 n.2 (noting that it was unlikely that counterclaim

adequately alleged damages where allegations of wrongful means were conclusory); John R.

Loftus, Inc. v. White, 540 N.Y.S.2d 610, 612 (3d Dep't 1989)  ("Plaintiff, however, does not

demonstrate any factual basis for its allegations of malice, other than suspicion. This conclusory

allegation of malice is therefore insufficient to support such cause of action").[14]  Plaintiffs'

allegations are nothing more than "a formulaic recitation of the elements" of "bad faith" and are

insufficient to support their claim.  Twombly, 127 S.Ct. at 1964-65.

Moreover, Plaintiffs' bald and conclusory allegation of "malice" or "improper means" is

belied by its own allegation that defendants "intend to use [Plaintiffs'] work product in order to

develop the Project with a different investor."  Compl. ¶ 12; see also Compl. ¶ 58 ("on

information and belief, Defendants have partnered with another investor, and intend to move

forward with the Project as planned without IGY").  Under New York law, Plaintiff cannot meet

this critical element of showing "malice" or "improper means" if defendants' actions were

---

[13] Compl. ¶ 105.

[14] Wrongful means include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion along although it is knowingly directed at interference with a business relationship." Camp Summit of Summitville, Inc. v. Visinski, No. 06-CV-4994 (CM)(GAY), 2007 WL 1152894, at *14 (S.D.N.Y. April 16, 2007) (citations omitted).  Although Plaintiff alleges that Defendants fraudulently induced Plaintiff IGY to "consent to the assignment of some portion of" BCDC's interest to Adurion, this claim, which defendants contest, is allegedly directed at IGY, and not at the Bahamian government, and, moreover, is not alleged to have been directed towards having the Bahamian government end its purported business relationship with Plaintiffs. Black Radio Network, Inc., 2000 WL 64874, at *4.

motivated by some economic self-interest." See Advanced Global Tech., LLC., 836 N.Y.S.2d at 812 (granting motion to dismiss and dismissing tortious interference with prospective business relations claim because "[t]he allegations and the documentary evidence . . . confirm that economic self-interest motivated [defendant's] conduct, at least in part, and, thus, [plaintiff] cannot assert that [defendant acted solely out of malice").

Fourth, Plaintiffs have failed to allege with any specificity the injury it suffered as a result of the alleged breach.  As to their first claim, Plaintiffs have failed to show what benefit, apart from those contemplated in the Purchase Agreement, they would have received but for defendants' alleged tortious conduct.  Their second claim, which relates to an as-of-yet-uncontemplated future other marina development on Nassau, is also equally, if not more, speculative.  As their Complaint highlights, their injury claim is purely speculative.  See Compl. ¶ 13 ("Defendants' actions *could* cause irreparable harm to the fundamental business plan of IGYL and IGY which is to develop, own and operate luxury marina facilities, in this case on the island of Nassau and New Providence Island.") (emphasis added); id. ("the same officials within government who worked on this transaction closely with IGYL *might* consider that IGYL does not have the ability or intention to complete an alternative marina development due to the failure to complete this transaction") (emphasis added).  A claim for tortious interference with prospective business relations cannot stand where the injuries alleged are merely speculative. Camp Summit of Summitville, Inc., 2007 WL 1152894, at *15 (camp counselor "failed to allege any facts demonstrating that her relations with former … campers would have translated into additional, personally lucrative contracts"); see also Gianni Versace, S.p.A., 2003 WL 470340, at *2 n.2 (unlikely that counterclaim adequately alleged damages where injury was speculative).

## CONCLUSION

For the foregoing reasons, defendants OBI, OBII and BCDC respectfully submit that

Plaintiffs' claims against them should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for

failure to state a claim upon which relief might be granted.

Dated: New York, New York
       December 21, 2007

Respectfully submitted,

/s/ *Bruce S. Meyer*

Bruce S. Meyer (BM-3506)
Ryan P. Poscablo (RP-8496)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

John T. Morin (JM-0390)
Jennifer L. Marlborough (JM-4303)
Wormser, Kiely, Galef & Jacobs LLP
825 Third Avenue
New York, NY 10022
(212) 687-4900

*Attorneys for Defendants*