UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IGY OCEAN BAY PROPERTIES LIMITED and  :
ISLAND GLOBAL YACHTING LTD.           :
                                      :
                    Plaintiffs        :
                                      :
           -against-                  :
                                      :        07-CV-10520 (VM)
OCEAN BAY PROPERTIES I LIMITED,       :
OCEAN BAY PROPERTIES II LIMITED,      :
BRITISH COLONIAL DEVELOPMENT COMPANY  :
LIMITED, PRK HOLDINGS LTD., ADURION   :
CAPITAL LIMITED and GEORGE ALLEN,     :
                                      :
                    Defendants        :
------------------------------------------------------------------------x

**PRK HOLDINGS LTD., ADURION CAPITAL LIMITED AND GEORGE ALLEN'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)
SUBMITTED IN THE ALTERNATIVE TO THEIR
<u>MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2)</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

LEGAL STANDARD.................................................................................................. 3

    A.    ALL CLAIMS AGAINST PRK SHOULD BE DISMISSED AS THERE ARE NO ALLEGATIONS IN THE COMPLAINT REGARDING PRK ...................................................................... 4

    B.    IGY FAILS TO ALLEGE FACTS SUFFICIENT TO SUPPORT ITS THIRD CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACT AGAINST ADURION .............. 6

    C.    PLAINTIFFS' FOURTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS AGAINST ADURION MUST ALSO BE DISMISSED ........................................................................ 10

    D.    IGY'S FIFTH CAUSE OF ACTION FOR FRAUDULENT INDUCEMENT SHOULD BE DISMISSED.......................................... 13

        1.    *The Fraudulent Inducement Claim Should Be Dismissed Because Plaintiff Has Not Shown That It Relied On The Misrepresentation Of A Material Fact* ........................................ 14

        2.    *IGY Fails to Allege the Circumstances Constituting Fraud With Particularity* ........................................................................ 15

    E.    IGY'S SIXTH CAUSE OF ACTION FOR UNFAIR COMPETITION FAILS TO ASSERT ANY ALLEGATIONS AGAINST ADURION, PRK AND ALLEN AND SHOULD BE DISMISSED ........................................................................ 17

    F.    PLAINTIFFS' SEVENTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS SHOULD BE DISMISSED ......................... 21

CONCLUSION........................................................................................................... 24

i

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*, 515 F. Supp. 2d 298
 (S.D.N.Y. 2007) ................................................................................21

*Am. Fin. Int'l Group-Asia, LLC, v. Bennett,* No. 05 Civ. 8988(GEL), 2007 WL
 1732427 (S.D.N.Y. Jun. 14, 2007) ................................................................18

*Appalachian Enters., Inc. v. ePayment Solutions, Ltd.*, No. 01 CV 11502 (GBD),
 2004 WL 2813121 (S.D.N.Y. Dec. 8, 2004) ................................5, 6, 16, 17, 19

*Atari, Inc. v. Games Inc.*, No. 04 Civ. 3723, 2005 WL 447503 (S.D.N.Y. Feb. 24,
 2005) ........................................................................................20

*Bell Atl. Corp. v.  Twombly*, 127 S. Ct. 1955 (2007) ...........................3, 4, 13, 20, 21, 24

*Black Radio Network, Inc. v. NYNEX Corp.*, No. 96 Civ. 4138(DC), 2000 WL
 64874 (S.D.N.Y. Jan. 25, 2000)..........................................................22

*Brownstone Inv. Group v. Levey*, 468 F. Supp. 2d 654 (S.D.N.Y. 2007)........................14, 15, 16

*Bulger v. Royal Doulton, PLC*, 05 Civ. 7709 (DAB), 2006 WL 3771016
 (S.D.N.Y. Dec. 19, 2006)..................................................................17, 21

*Camp Summit of Summitville, Inc. v. Visinski.*, No. 06-CV-4994 (CM), 2007 WL
 1152894 (S.D.N.Y. Apr. 16, 2007)....................................................10, 11, 23

*Commercial Data Servers, Inc. v. Int'l Bus. Machs. Corp.*, 166 F. Supp. 2d 891
 (S.D.N.Y. 2001) ...........................................................................17, 20

*Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) .............................4

*Exportaciones Del Futuro S.A. de C.V. v. Iconix Brand Group Inc. Civ 4145
 (LBS)*, 2007 WL 3306699 (S.D.N.Y. Nov. 6, 2007)........................................10, 11, 12, 23

*Gianni Versace, S.p.A. v. Versace*, 01 Civ. 9645 (PKL)(THK), 2003 WL 470340
 (S.D.N.Y. Feb. 25, 2003) ................................................................23, 24

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007).............................................4

*Marks v. City of Seattle*, No. C03-1701, 2003 WL 23024522 (W.D. Wash. Oct.
 16, 2003) ..................................................................................14

*Masefield AG v. Colonial Oil Industries*, No. 05 Civ. 2231 (PKL), 2006 WL
   346178 (S.D.N.Y. Feb. 15, 2006) ............................................................8, 9, 11

*Medina v. Bauer*, No. 02 Civ. 8837 (DC), 2004 WL 136636 (S.D.N.Y. Jan. 27,
   2004) .........................................................................................................5, 6, 18

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993)........................................16

*Minnesota Mining and Mfg. Co. v. Graham-Field, Inc.*, 96 Civ. 3839 (MBM),
   1997 WL 166497 (S.D.N.Y. Apr. 9, 1997).................................................20, 22

*Multi-Juice, S.A. v. Snapple Beverage Corp.*, No. 02 Civ. 4635(RPP), 2003 WL
   1961636 (S.D.N.Y. 2003) ........................................................................................7

*Piccoli v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 172 (S.D.N.Y. 1998) ......18

*Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73 (S.D.N.Y. 1995) ...................................12

*Saidin v. New York City Dep't of Educ.*, 498 F. Supp. 2d 683 (S.D.N.Y. 2007) .............4

*Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037 (2d Cir. 1980)..................17

*Stiefel v. Bechtel Corp.*, 497 F. Supp. 2d 1138 (S.D. Cal. 2007).....................................7

*Vacold LLC and Immunotherapy, Inc. v. Cerami*, No. 00 Civ. 4024 (AGS), 2002
   WL 193157 (S.D.N.Y. Feb. 7, 2002)......................................................................4

*Vinas v. Chubb Corp.*, 499 F. Supp. 2d 427 (S.D.N.Y. 2007).........................................8

*Walter v. Consolidated Edison Co. of New York Inc.*, , No. 05-CV-1284 (NG),
   2006 WL 2228996 (E.D.N.Y. Aug. 3, 2006).........................................................6

*White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281 (2d Cir. 2006).........6, 7

*World Wide Communications, Inc. v. Rozar*, No. 96 Civ. 1056 (MBM), 1997 WL
   795750 (S.D.N.Y. Dec. 30, 1997).........................................................................9

## STATE CASES

*Advanced Global Tech. LLC v. Sirius Satellite Radio, Inc.*, 836 N.Y.S.2d 807
   (Sup. Ct., N.Y. Co. 2007) .............................................................10, 11, 12, 23

*Brown v. Lockwood*, 76 A.D.2d 721, 730 (2d Dep't 1980) ...........................................14

*Cohen v. Houseconnect Realty Corp.*, 289 A.D.2d 277 (2d Dep't 2001) ......................................14

*Foster v. Churchill*, 87 N.Y.2d 744 (1996)..................................................................................6, 8

*Herman & Beinin v. Greenhaus*, 258 A.D.2d 260 (1st Dep't 1999)...............................................7

*J&L Am. Enters., Ltd. v. DSA Direct, LLC*, No. 401937/05, 2006 WL 216680
    (Sup. Ct., N.Y. Co. Jan. 27, 2006) ...........................................................................................7

*MTI/The Image Group, Inc. v. Fox Studios East, Inc.*, 262 A.D.2d 20 (1st Dep't
    1999) ..........................................................................................................................................7

*S.A.E. Motor Parts v. Tenenbaum*, 226 A.D.2d 518 (2d Dep't 1996)............................................9

*White Plains Coat & Apron Co., Inc.*, 8 N.Y. 3d 422, 426 (2007)..................................................7

## STATUTES

Federal Rule of Civil Procedure 9(b)....................................................................................2, 14, 17

Federal Rule of Civil Procedure 12(b)(2) ........................................................................................1

Federal Rule of Civil Procedure 12(b)(6) ......................................................................1, 3, 4, 24

N.Y. C.P.L.R. § 3016(b) ...............................................................................................................14

Defendants PRK Holdings, Inc. ("PRK"), Adurion Capital Limited ("Adurion") and George Allen ("Allen" and, collectively with PRK and Adurion, the "Non-contracting Defendants"), by and through their attorneys Weil, Gotshal & Manges, LLP and Wormser, Kiely, Galef & Jacobs LLP, respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss plaintiff IGY Ocean Bay Properties Limited ("IGY") and Island Global Yachting Ltd.'s ("IGYL" and, collectively with IGY, "Plaintiffs") complaint. Non-contracting Defendants' 12(b)(6) motion is being submitted contemporaneously with, and in the alternative to, their motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

## PRELIMINARY STATEMENT

Through this lawsuit, Plaintiffs IGY and IGYL seek to resuscitate a transaction that, through IGY's own delay and inactivity, was properly terminated by defendants Ocean Bay Properties I Limited ("OBI"), Ocean Bay Properties II Limited ("OBII") and British Colonial Development Company ("BCDC" and, collectively with OBI and OBII, the "Contracting Defendants"). In addition to their breach of contract claim, however, Plaintiffs also seek to assert various tort claims that are related to and indeed spring from their breach of contract claim against third party defendants -- PRK, Adurion and George Allen -- who were not signatories to the Purchase Agreement, and who, even as alleged, appear not to have engaged in any tortious or otherwise wrongful acts.

Importantly, and as an initial matter, there are no substantive allegations regarding PRK whatsoever. In fact, PRK is only specifically mentioned four times in the *entire* Complaint. Although the Complaint attempts to lump PRK in with the Contracting Defendants as a "Seller," the Purchase Agreement makes clear that PRK was neither a "Seller" nor a party thereto.

The rest of the Complaint consists entirely of unsupported and conclusory allegations that fail to sufficiently assert any plausible causes of action against the Non-contracting Defendants. For instance, IGY makes no substantive allegations against any of them in support of its unfair competition claim. Rather, the Complaint alleges that the *Contracting Defendants* misappropriated certain "studies, reports and analysis" that were created for the Contracting Defendants and which, under the Purchase Agreement, rightfully belong to them. Further, IGY also alleges that the *Contracting Defendants* misappropriated the "fruitful results of negotiations" IGY had with the Bahamian government. Though these allegations are implausible, even to the extent that they attempt to implicate the Contracting Defendants, they *in no way* implicate the Non-contracting Defendants. IGY's conclusory allegations, pled by reciting nothing more than the elements of the claim, fail to allege what PRK, Adurion, or Allen did, what property they allegedly misappropriated, or that they did so in bad faith.

IGY's fraudulent inducement claim fares no better. This cause of action relies on the premise that all of the defendants, through George Allen, induced IGY to give its consent, which was not required under the Purchase Agreement, to an assignment of BCDC's interest in the project. Plaintiffs allege that Allen, as agent of Sellers, misrepresented to IGY that Adurion would agree to the draft Shareholders' Agreement that was still being negotiated. In essence, IGY's fraudulent inducement argument is that Allen's alleged misrepresentations induced IGY to consent to a transaction when such consent was not required. By failing to describe with any particularity the specific statements that were made, where and when they were made, and why the statements were fraudulent, IGY's claim additionally fails to meet the rigorous heightened pleading requirements of Fed. R. Civ. P. 9(b).

IGY and IGYL also allege that all of the defendants tortiously interfered with Plaintiffs' prospective business relations with the Bahamian government.  Similarly lacking any allegations that point to conduct by Adurion, PRK or Allen, this claim fails to sufficiently assert any supportive non-conclusory facts.  Plaintiffs, for example, fail to identify *any* conduct by any of the defendants that was directed at the Bahamian government, a necessary and critical element of the claim.  Further, their assertion of a "business relationship" with the Bahamian government, like IGY's misappropriation claim, is tenuous and speculative.  Moreover, IGY fails to sufficiently allege that the alleged interferers acted in bad faith.

Lastly, IGY asserts causes of action against Adurion for tortious interference with contract and tortious interference with business relations arising out of essentially the same conduct.  These claims center on IGY's allegations that Adurion induced the Contracting Defendants to violate the "good faith" and "best efforts" to negotiate provisions in the Purchase Agreement.  Notably, none of the allegations directed against Adurion on these matters plausibly suggest that Adurion, a party alleged to have an economic interest in the transaction, was acting with anything other than its own business interests in mind.  For this reason alone, the claim fails.  Nevertheless, IGY additionally fails to plausibly allege that Adurion's actions were the ultimate cause of the breakdown in the relationship, whether it was contractual or otherwise, between IGY and the Contracting Defendants.

Accordingly, all of Plaintiffs' allegations fail as a matter of law, and the Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## **LEGAL STANDARD**

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp.</u> v.

Twombly, 127 S.Ct. 1955, 1974 (2007).  Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Id. at 1965 (internal citations omitted). Allegations that are mere conclusions of law or unwarranted deductions of fact, however, need not be accepted as true.  See Saidin v. New York City Dep't of Educ., 498 F. Supp. 2d 683, 686 (S.D.N.Y. 2007) (citation omitted).  Indeed, plaintiff must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1965.  The Second Circuit has interpreted the "plausibility standard" to mean that enough facts must be alleged to "nudge [plaintiffs'] claims across the line from conceivable to plausible."  In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents attached to the complaint as exhibits or incorporated in it by reference.  See Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991).  A court may also consider documents relied upon and integral to the complaint, even if the plaintiffs have not annexed those documents to the complaint.  Id.; see also Vacold LLC and Immunotherapy, Inc. v. Cerami, No. 00 Civ. 4024 (AGS), 2002 WL 193157, at *3, (S.D.N.Y. Feb. 7, 2002).

## A. **ALL CLAIMS AGAINST PRK SHOULD BE DISMISSED AS THERE ARE NO ALLEGATIONS IN THE COMPLAINT REGARDING PRK**

PRK moves, in the first instance, to dismiss all of the claims asserted in IGY and IGYL's Complaint for failing to assert a single plausible claim against it.  PRK is specifically mentioned a total of three times in the entire Complaint.  See Compl. ¶¶ 1, 2, 19; see also Compl. passim. None of these allegations support a single substantive claim against PRK.  None of these allegations sufficiently inform PRK what it is alleged to have done or what actions it is alleged to have taken.  Rather, Plaintiffs attempt to fold PRK into the generic terms "Defendants" and

"Sellers" without describing any specific actions or conduct by PRK. It is clear, however, that to the extent Plaintiffs rely on allegations asserted against "all defendants" to support their claims, such allegations do not satisfy Rule 8. See Medina v. Bauer, No. 02 Civ. 8837 (DC), 2004 WL 136636, at *6 (S.D.N.Y. Jan. 27, 2004) ("By lumping all the defendants together and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the requirements of Rule 8. Specifically, the allegations fail to give adequate notice to these defendants as to what they did wrong."); Appalachian Enters., Inc. v. ePayment Solutions, Ltd., No. 01 CV 11502 (GBD), 2004 WL 2813121, at *7 (S.D.N.Y. Dec. 8, 2004) (finding claim insufficiently pled where complaint "does not identify any particular defendant that committed any specific act of wrongdoing against plaintiff … [but] simply attributes the wrongful acts as being committed collectively").

Although PRK is lumped in with the Contracting Defendants and described as a "Seller," there are no allegations that explain how PRK was a "Seller" of the underlying property. Rather, the Purchase Agreement clearly and explicitly defines as "Sellers" OBI, OBII and, in certain specific instances, BCDC. See Purchase Agreement at 1 and § 5.10. PRK is not even mentioned or discussed in, and is certainly not a signatory to, the Purchase Agreement. There are, therefore, simply no allegations to support Plaintiffs' assertion that PRK is a "Seller."

Importantly, the three claims alleged against PRK – fraudulent inducement, unfair competition and tortious interference with prospective business relations – all lack sufficient allegations to support a plausible claim. In support of IGY's fraudulent inducement claim, IGY alleges that Allen acted "as Agent of the Sellers" and "on Sellers behalf." As noted above, however, the Purchase Agreement clearly provides that PRK was not a "seller" of the property. Further, as discussed below, IGY's unfair competition claim asserts no allegations concerning

PRK, Adurion *or* Allen, but rather conclusorily alleges actions and conduct by defendants OBI, OBII and BCDC. IGY's tortious interference with prospective business relations claim suffers from the same pleading malady, as there are no allegations regarding PRK, or any of the Non-contracting Defendants.

The absence of any allegations against PRK warrants the dismissal of all claims asserted against it. See Walter v. Consol. Edison Co. of N.Y. Inc., No. 05-CV-1284 (NG) (RLM), 2006 WL 2228996, at *3-4 (E.D.N.Y. Aug. 3, 2006) (dismissing all claims as to two defendants where, "although plaintiff repeatedly recites their names, the Complaint is in fact devoid of allegations against them"); see, e.g., Medina, 2004 WL 136636 at *6; Appalachian Enters., Inc., 2004 WL 2813121 at *7.

## B. IGY FAILS TO ALLEGE FACTS SUFFICIENT TO SUPPORT ITS THIRD CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACT AGAINST ADURION

In its Third Cause of Action, IGY alleges that Adurion tortiously interfered with the Purchase Agreement. Under New York law,[1] in order to assert a tortious interference with contract claim, IGY must sufficiently assert: (1) the existence of a valid contract; (2) defendant's knowledge of such a contract; (3) defendant's intentional procuring of the breach and (4) damages caused by the breach. See White Plains Coat & Apron Co. v. Cintas Corp., 460 F.3d 281, 285 (2d Cir. 2006); Foster v. Churchill, 87 N.Y.2d 744, 749-50 (1996). As more fully set forth in Section A of the motion to dismiss filed by the Contracting Defendants – all of which are incorporated by reference as if fully set forth herein – IGY has not alleged, and cannot possibly allege, the breach of an existing and valid contract between itself and a third party. This claim,

---

[1] For the purposes of this motion, the Non-contracting Defendants apply New York law but do not waive their right to assert, at a future time, that Plaintiffs' claims should be adjudicated under the law of a different jurisdiction.

therefore, should be dismissed as a matter of law.  See <u>Herman & Beinin</u> v. <u>Greenhaus</u>, 258

A.D.2d 260, 260 (1st Dep't 1999) ("Since there was no binding contract, plaintiff's claim for

tortious interference with contract was properly dismissed"); <u>J&L Am. Enters., Ltd.</u> v. <u>DSA</u>

<u>Direct, LLC</u>, No. 401937/05, 2006 WL 216680, at *3 (Sup. Ct., N.Y. Co. Jan. 27, 2006).

Should the Court determine, however, that IGY sufficiently alleged a breach of the

Purchase Agreement, IGY's tortious interference claims should still be dismissed.  IGY alleges

that Adurion, after "acquir[ing] in some manner" a "majority economic interest and a voting

interest" in BCDC, "demanded the renegotiation of the Amended and Restated Operating

Agreement ("Shareholders' Agreement"). Compl. ¶¶ 6,42, 48.  Plaintiff further contends that

Adurion "controlled the Sellers and prevented them from approving the agreed upon

documents," including causing them to refuse to approve the form of Shareholders' Agreement

that was previously negotiated, but never finalized.  Compl. ¶ 10.  This refusal, according to

Plaintiff, constituted a material breach by Contracting Defendants of the Purchase Agreement.

<u>See</u> Compl. ¶¶ 50-52, 78-79.  Under New York law, however, Plaintiff's tortious interference

claim must fail, as any entity with an "economic interest" in the underlying contract has the right

to interfere with that contract.[2]  <u>See</u> <u>Multi-Juice, S.A.</u> v. <u>Snapple Beverage Corp.</u>, No. 02 Civ.

4635(RPP), 2003 WL 1961636, at *5 (S.D.N.Y. 2003); <u>see also</u> <u>MTI/The Image Group, Inc.</u> v.

<u>Fox Studios East, Inc.</u>, 262 A.D.2d 20, 23-24, (1st Dep't 1999) (noting that it was an error not

too dismiss a tortious interference claim where all named companies were either parent or sister

companies); <u>White Plains Coat & Apron Co., Inc.</u>, 8 N.Y.3d 422, 426 (2007) (noting that the

---

[2] Adurion, however, is neither OBI, OBII or BCDC's parent company.  Adurion is a mid-market
investment boutique active in the London market.  <u>See</u> Decl. of Jürg Gassmann in Supp. of
Adurion's Mot. to Dismiss, ¶ 4.  The Court can and should, nevertheless, dismiss IGY's claim.
<u>See</u> <u>e.g.</u>, <u>Stiefel</u> v. <u>Bechtel Corp.</u>, 497 F. Supp. 2d 1138, 1143 n.1 (S.D. Cal. 2007) (granting
defendant's motion to dismiss and acknowledging defendant's contention that plaintiff named
the wrong entity).

economic interest defense has been applied "where the defendant had a managerial contract with the breaching party at the time defendant induced the breach of contract with plaintiff").

Where, as here, IGY alleges that the defendant acted, at least in part, out of an "economic self-interest," in order to sustain its claim, IGY is required to further plead "that the alleged interference was motivated by malice or involved criminal or fraudulent conduct" in order to survive a motion to dismiss.  See Masefield AG v. Colonial Oil Indus., No. 05 Civ. 2231 (PKL), 2006 WL 346178, at *6 (S.D.N.Y. Feb. 15, 2006); see also Foster, 87 N.Y.2d at 750.  IGY's "malice" allegation, however, is also insufficient, asserting conclusorily that "Adurion, acting in bad faith, either with the sole purpose to harm IGY or with wrongful, dishonest, unfair and improper means and intentionally, maliciously and without justification."  Compl. ¶ 78.  Though this provides a thesaurus's worth of regurgitated and unsupported adjectives synonymous with "malicious," the allegation provides no factual basis and is simply insufficient to find that Adurion acted in bad faith.  See Masefield, No. 05 Civ. 2231 (PKL), 2006 WL 346178, at *6 (dismissing claim for tortious interference with contract where counterclaimant "provided no factual assertions to support its conclusory allegation that [counterdefendant] 'acted with dishonesty and unfair means.'"); see also Vinas v. Chubb Corp., 499 F. Supp. 2d 427, 434 n.15 (S.D.N.Y. 2007) ("Were [defendant] to qualify for the 'economic interest' defense, it is highly unlikely that [plaintiff's] tortious interference [with contract] claim would survive, as Vinas alleges no facts, aside from conclusory allegations, that support an inference of malice or 'conduct rising to the level of criminality or fraud'").

Nor can "malice" by Adurion be inferred from the other allegations in the Complaint. IGY alleges, for example, that Adurion made, or caused Sellers to demand, that the boundaries of the land be decreased, that payment by IGY be increased, that IGY take on additional

obligations, that the Sellers be granted additional management rights, and that the limits of the marina, site configuration, and emergency access to the British Colonial hotel be renegotiated. See Compl. ¶ 50. These allegations suggest Adurion's desire, based on its economic interest, to secure favorable terms during the course of a negotiation. Such conduct does not support an assertion that Adurion acted with malice, or otherwise engaged in tortious or criminal conduct, but rather suggests a clear motivation for "economic profit." See Masefield, 2006 WL 346178, at *6 (holding that allegations that counterdefendants applied pressure on a second company to "either raise the price of the cargos under the Contract or cancel the Contract because it was losing money," were not sufficient to support counterclaimant's conclusory assertions that counterdefendants "acted with dishonesty and unfair means," but rather displayed that counterdefendants were "motivated by a desire for economic profit").

Even if the Court were to find that Adurion's actions were undertaken with "malice," IGY's tortious interference with contract claim still fails because IGY has insufficiently pled that Adurion "procured" a breach of the contract. Plaintiff's Complaint fails to set forth the actions Adurion took to induce OBI, OBII and BCDC to breach the contract by seeking to secure more favorable terms under the draft Shareholders' Agreement. Absent any factual support for the notion that making such demands induced Sellers to breach, IGY's claim must fail. See World Wide Commc'n, Inc. v. Rozar, No. 96 Civ. 1056 (MBM) (NRB), 1997 WL 795750, at *7 (S.D.N.Y. Dec. 30, 1997) (motion to dismiss counterclaim for tortious interference with contract granted where, among other things, there was no specification regarding how counterclaimant's actions allegedly induced a breach, what the causal connection between the actions and the breach was and why it was improper for counterclaimant to act as they did.); S.A.E. Motor Parts v. Tenenbaum, 226 A.D.2d 518, 519 (2d Dep't 1996) ("[P]laintiff's allegations that third parties

cancelled contracts with it because of the actions of the defendant are insufficient, without a

factual basis, to state a cause of action for tortious interference with contractual relations").

**C.** **PLAINTIFFS' FOURTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS AGAINST ADURION MUST ALSO BE DISMISSED**

Under New York law, to assert a claim for tortious interference with business relations,

Plaintiffs must assert (1) a business relationship with a third party; (2) that Adurion knew of and

interfered with this relationship; (3) that Adurion acted solely out of malice, or used dishonest,

unfair, or improper means; and (4) that Adurion's interference caused injury to the relationship.

See Exportaciones Del Futuro S.A. De C.V. v. Iconix Brand Group Inc., No. 07 Civ 4145 (LBS),

2007 WL 3306699, at *2 (S.D.N.Y. Nov. 6, 2007); Advanced Global Tech. LLC v. Sirius

Satellite Radio, Inc., 836 N.Y.S.2d 807, 810 (Sup. Ct., N.Y. Co. 2007).

IGY and IGYL's tortious interference with business relations claim against Adurion rests

on essentially the same set of factual allegations underlying IGY's tortious interference with

contract claim.  Specifically, they claim that *but for* Adurion's alleged interference, "the

negotiations and relations among Plaintiffs, and the Ocean Bay Entities and British Colonial

would have culminated in an approved Shareholders' Agreement," which would have allegedly

closed the transaction.[3]  As discussed *supra*, these allegations are insufficient to support a

tortious interference with contract claim, and likewise fail to state a claim for tortious

interference with prospective business relations.  See Camp Summit of Summitville, Inc. v.

Visinski, No. 06-CV-4994 (CM) (GAY), 2007 WL 1152894, at *15 (S.D.N.Y. April 16, 2007)

---

[3] Notably however, the Shareholders' Agreement was not the "*sine qua non*" to closing the transaction as repeatedly alleged by Plaintiffs.  Compl. ¶¶ 3, 9, 52, Indeed, it was simply one of several requirements to be delivered at Closing.  See Purchase Agreement, §§ 2.05, 2.06, 7.01 and 7.02 (listing other required deliverables including *inter alia* the "Parking Lot Management Agreement").

(dismissing interference with prospective business relations claim where plaintiff "is essentially reiterating her . . . interference with contract claim").

Moreover, as numerous New York courts have found, a claim for tortious interference with prospective business relations is a "difficult one to sustain, with requirements 'more demanding than those for interference with [the] performance of an existing contract.'" Exportaciones Del Futuro S.A. De C.V., 2007 WL 3306699, at *2. Plaintiffs must allege that defendants either acted with "the sole purpose of harming Plaintiff or used wrongful, dishonest, unfair or improper means" in interfering with the business relationship. See id.; Advanced Global, 836 N.Y.S.2d at 810.

Plaintiffs, however, have failed to allege any facts to support this critical element. Where, as here, Plaintiffs themselves have alleged Adurion's economic interest in the project, see Compl. ¶¶ 6, 42, Plaintiffs are precluded from asserting that Adurion's actions were motivated *solely* to cause harm. Rather, Plaintiffs must allege that Adurion's conduct was performed using "wrongful means." See e.g., Masefield, 2006 WL 346178, at *7 (noting that a "defendant whose interference was intended, at least in part to advance its own interest, cannot be said to have acted solely out of malice. In such cases, therefore, a plaintiff must show that a defendant acted by wrongful means"). Wrongful means conduct is that which amounts to a crime or an independent tort, including physical violence, fraud or misrepresentation, or malicious prosecution. See Camp Summit of Summitville, Inc., 2007 WL 1152894, at *15. There are no such allegations in Plaintiffs Complaint.[4]

---

[4] Although Plaintiff IGY alleges that defendants fraudulently induced it to consent to an assignment of the rights under the Purchase Agreement, this alleged and unrelated conduct lends no support here. As previously discussed, the statements underlying Plaintiff IGY's fraudulent inducement claim were made by defendant George Allen "as Agent for Sellers" defined to include OBI, OBII, BCDC and PRK, and not as an agent for Adurion.

Here, Plaintiffs' allegations of "wrongful conduct" do nothing more than mirror the language of the legal standard. Their sole allegation is that Adurion "acted in bad faith, either with the sole purpose to harm Plaintiffs or with wrongful, dishonest, unfair and improper means and intentionally, maliciously, and without justification interfered in the business relationship between Plaintiffs and the Ocean Bay Entities and British Colonial." Compl. ¶ 85. Such a blanket assertion of wrongful conduct is insufficient to allege the existence of "wrongful means" in support of a tortious interference with business relations claim. See Exportaciones Del Futuro 2007 WL 3306699, at *2 (citations omitted) (finding that "simply reciting conclusory words like 'dishonest, unfair, or improper means,'" insufficiently alleges tortious interference with prospective business relations).

In addition, Plaintiffs are required to allege facts sufficient to show that defendants' behavior caused injury to the business relationship. Advanced Global Tech. LLC, 836 N.Y.S.2d at 810. Specifically, Plaintiffs must demonstrate that but for Adurion's conduct, their business relations with the Contracting Defendants "would have coalesced into actual contracts." Riddell Sports Inc. v. Brooks, 872 F. Supp. 73, 78 (S.D.N.Y. 1995). Where a claimant fails to allege facts sufficient for the Court to infer that the contractual relationship would have consummated, if not for defendant's conduct, the claim must fail. See id. at 79 ("Counterplaintiffs' allegations are too vague to support a finding that they would have executed specific contracts but for interference by counterdefendants"). The Complaint conclusorily alleges that "but for the wrongful interference by Adurion, the negotiations and relations among Plaintiffs and the Ocean Bay Entities and British Colonial would have culminated in an approved Shareholders' Agreement, and accordingly would have culminated in a closing of the "transaction contemplated by the Purchase Agreement." Compl. ¶ 83. This allegation simply mirrors the

language of the legal standard and fails to provide any supportive facts.  See Riddell Sports, 872 F. Supp. at 79; Camp Summit of Summitville, Inc., 2007 WL 1152894, at *15 (dismissing tortious interference with prospective business relations claim where counterclaimant "failed to allege any facts demonstrating that her relations with former … campers would have translated into additional, personally lucrative contracts, but for [counterdefendant's] interference").  Here, Plaintiffs do nothing more than provide a "formulaic recitation of the elements of a cause of action" that fail to set forth a plausible claim which would entitle them to relief.  Twombly, 127 S.Ct. at 1964-65 (citations and internal quotations omitted).  Accordingly, their claim should be dismissed.

### D.  IGY'S FIFTH CAUSE OF ACTION FOR FRAUDULENT INDUCEMENT SHOULD BE DISMISSED

In its Fifth Cause of Action, IGY asserts a claim for fraudulent inducement based on statements allegedly made by defendant George Allen, purportedly "as Agent of the Sellers," regarding the future intent of Adurion, a non-signatory and non-party to the Purchase Agreement.  See Compl. ¶ 90.  Specifically, IGY alleges that "[p]ursuant to Section 10.07 of the Purchase Agreement," its consent was required "before the Sellers could assign the Purchase Agreement to another party."  Compl. ¶ 42.  BCDC allegedly requested that IGY "consent to the assignment of some portion of [BCDC's] interest to Adurion."  Id.  IGY claims that it was fraudulently induced by "all defendants" to consent to this purported assignment by defendant Allen, who "on behalf of the Sellers specifically assured IGY that Adurion intended to cooperate in closing the transaction in accordance with the Purchase Agreement."  Compl. ¶ 43.  Such cooperation by Adurion allegedly included approval of the draft Shareholders' Agreement, which had not been executed by the parties.  As discussed below, however, IGY's claim is based entirely on a premise that is plainly inconsistent with the Purchase Agreement, namely, that the

"assignment" it was induced to consent to in fact required its consent.  Further, IGY's fraudulent inducement claim fails to meet the "heightened" pleading standards required under Federal Rule of Civil Procedure 9(b) which requires that the circumstances constituting fraud be "stated with particularity," and also fails to sufficiently allege the various elements of the claim.[5]  For these reasons, IGY's claim against Adurion, PRK, and George Allen should be dismissed.

In order to assert a claim for fraudulent inducement, IGY must allege "(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury."  See Brown v. Lockwood, 76 A.D.2d 721, 730 (2d Dep't 1980); see also Brownstone Inv. Group, 468 F.Supp.2d at 658; Cohen v. Houseconnect Realty Corp., 289 A.D.2d 277, 278 (2d Dep't 2001).

1.  *The Fraudulent Inducement Claim Should Be Dismissed Because Plaintiff Has Not Shown That It Relied On The Misrepresentation Of A Material Fact*

As a threshold matter, IGY's fraudulent inducement claim is based on an incorrect factual premise, as Section 10.07 of the Purchase Agreement only requires IGY's consent when there is an *assignment of the Purchase Agreement* by the Contracting Defendants to a third-party.  See Purchase Agreement, § 10.07 ("Seller may, with the prior written consent of Purchaser, which consent shall not be unreasonably conditioned, withheld or delayed, assign this Agreement to a party that agrees to acquire the BC Hotel").  IGY itself alleges that it was only asked to "consent

---

[5] As the sufficiency of pleadings is procedural, rather than substantive, Federal Law, and not New York law applies when analyzing whether the complaint is well-pled.  See, e.g., Marks v. City of Seattle, No. C03-1701, 2003 WL 23024522 at *2 (W.D. Wash. Oct. 16, 2003) (after removal, "federal law, not state law, governs with what specificity Plaintiff must plead in order to survive a 12(b)(6) motion").  Even assuming that New York law applied, the result would be the same as the standard for pleading fraud under N.Y. C.P.L.R. § 3016(b), also requires that, where fraud is alleged, "the circumstances constituting the wrong shall be stated in detail."

to the assignment of *some portion* of [BCDC's] *interest* to ACL." Compl. ¶ 42 (emphasis added). IGY has not alleged, and cannot allege, that it was asked to consent to the *assignment of the Purchase Agreement* as required under Section 10.07. As such, IGY cannot allege that it was induced to do anything <u>material</u> in reliance on Allen's alleged misrepresentations. This claim, therefore, should be dismissed as a matter of law.[6]

Additionally, even accepting that IGY's consent was required and that Allen's misrepresentations related to a material fact, this cause of action still fails as IGY cannot allege that it <u>reasonably</u> relied on Allen's misrepresentations. Plaintiff IGY does not claim that Allen represented, or held himself out as a representative of, Adurion. Absent some belief that Allen had authority to speak on Adurion's behalf, it would not be reasonable or justifiable for IGY to rely on any statement that Allen made with respect to Adurion's future intentions.

   2.   <u>*IGY Fails to Allege the Circumstances Constituting Fraud With Particularity*</u>

Where, as here, there are multiple defendants, Plaintiff's Complaint must inform *each* defendant of the nature of his participation in the fraud. <u>See</u> <u>Brownstone Inv. Group</u> v. <u>Levey</u>, 468 F. Supp. 2d 654, 658-59 (S.D.N.Y. 2007). While the Complaint nominally asserts, in its caption, that the Fifth Cause of Action is "against all Defendants," the Complaint specifically states that Allen was acting only "as Agent of the Sellers." Compl. ¶ 90. The Complaint contains no allegations either that Allen was, or that he held himself out to be, the agent of Adurion. As such, IGY's fraudulent inducement claim must be dismissed as to Adurion.

Further, the Complaint fails to allege any specific action taken by PRK. Although PRK is defined by Plaintiffs as a "Seller," as discussed *supra*, PRK is not a "Seller" under the

---

[6] There are no allegations in the Complaint that any entity except OBI, OBII and BCDC became "a party to" the Purchase Agreement. Indeed, Plaintiff IGY does not allege that any such assignment was completed.

Purchase Agreement, and there are no allegations in the Complaint to support such a contention. IGY's fraudulent inducement claim against PRK should therefore be dismissed as well.  See Brownstone, 468 F. Supp. 2d at 659 ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.") (internal quotes removed); see also Appalachian Enters., Inc., 2004 WL 2813121, at *8 ("Rule 9(b) cannot be satisfied merely by attributing the alleged misstatements to all the defendants.") (citing Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).

Even if the Court were to accept that IGY sufficiently alleges that Allen was acting on behalf of either Adurion or PRK, the Complaint should still be dismissed for failure to allege the elements of fraudulent inducement with particularity.  In the Second Circuit, a complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statement was made, and (4) explain why the statements were fraudulent."  See Mills, 12 F.3d at 1175; Brownstone Inv. Group, 468 F.Supp.2d at 658-659.

IGY alleges that, in order to obtain IGY's "consent to the assignment of some portion of British Colonial's interest to Adurion," Allen told an IGY representative that "Adurion intended to honor the Sellers' obligations under the Purchase Agreement" and that "Adurion would stand by the transaction on the terms already agreed upon."  Compl. ¶ 90.  Further, IGY asserts that Allen told the IGY representative that "Adurion intended to proceed to closing the transaction which had been negotiated, that Adurion's involvement would not block the closing, and that Adurion intended to honor the Sellers' obligations under the Purchase Agreement, including approving the Shareholders' Agreement."  Id.  IGY alleges that Allen made this statement in

"early December 2006" and that Allen "reaffirmed that misrepresentation in numerous telephone calls and in person meetings in November and December 2006." Compl. ¶ 90. In sum, the Complaint conveys only that Allen spoke to an unnamed representative of IGY, in unnamed places, by phone or in person during a two month span of November and December 2006.

Such averments are insufficient to meet the heightened pleading standards of Fed. R. Civ. P. 9(b). In particular, these allegations fail to provide the Non-contracting Defendants with sufficient notice of the time and place these statements were made and further fail to sufficiently identify what Allen actually said. See Appalachian Enters., Inc., 2004 WL 2813121, at *8 ("Rule 9(b) cannot be satisfied merely by attributing the alleged misstatements to all the defendants.") (citation omitted). For all of the foregoing reasons, IGY's fraudulent inducement claim should be dismissed.

### E. IGY'S SIXTH CAUSE OF ACTION FOR UNFAIR COMPETITION FAILS TO ASSERT ANY ALLEGATIONS AGAINST ADURION, PRK AND ALLEN AND SHOULD BE DISMISSED

IGY also asserts an unfair competition claim against "all defendants" based entirely on the unsupported allegation that Contracting Defendants misappropriated IGY's work product and intends to use that work product to complete the project with a different partner. See Compl. ¶ 99. Under New York law, in addition to allegations regarding acts or omissions by defendants that proximately caused a misappropriation, a properly pled unfair competition claim must also sufficiently describe the property or benefit misappropriated. See Commercial Data Servers, Inc. v. Int'l Bus. Machs. Corp., 166 F. Supp.2d 891, 894 (S.D.N.Y. 2001). In addition, Plaintiff must show that the misappropriation was done in "bad faith." See Bulger v. Royal Doulton, *PLC*, 05 Civ. 7709 (DAB), 2006 WL 3771016, at *8 (S.D.N.Y. Dec. 19, 2006); Saratoga Vichy Spring Co., Inc. v. Lehman, 625 F.2d 1037, 1044 (2d Cir. 1980).

IGY's Complaint, however, contains <u>no</u> allegations regarding any of the Non-contracting Defendants. IGY alleges, for example, that "Defendants have, on information and belief, misappropriated the work product generated by IGY" and that "Defendants are using the work product developed by IGY … including designs, plans, financial projects and relationships." Compl. ¶¶ 12, 58. These generic allegations fail to identify the specific actions Adurion, Allen and PRK allegedly took, and are "so vague that it is difficult to say what behavior they are based on." <u>Am. Fin. Int'l Group-Asia, LLC,</u> v. <u>Bennett</u>, No. 05 Civ. 8988(GEL), 2007 WL 1732427, at *4 (S.D.N.Y. Jun. 14, 2007).

Indeed, <u>none</u> of the allegations IGY asserts in support of this claim even reference Adurion, PRK or Allen, let alone make any factual allegations to show how they unfairly competed with IGY. <u>See</u> Compl. ¶¶ 95-100. Rather, IGY alleges that "*Defendants the Ocean Bay Entities and British Colonial* have deliberately and willfully, by unfair and improper means, and in violation of their contractual and confidential obligations, misappropriated the labor and expenditures of IGY." <u>Id.</u> ¶ 98 (emphasis added). Further, IGY alleges that "*Defendants the Ocean Bay Entities and British Colonial* are unfairly misappropriating IGY's commercial advantage earned through organization, skill, labor, and money." <u>Id.</u> ¶ 99 (emphasis added). Plaintiffs' failure to assert a single allegation against any of the Non-contracting Defendants warrants the dismissal of this claim. <u>See</u> <u>Piccoli</u> v. <u>Calvin Klein Jeanswear Co.,</u> 19 F. Supp. 2d 157, 172 (S.D.N.Y. 1998) (finding that Plaintiff failed to allege facts sufficient to establish direct liability for unfair competition as against specific defendants); <u>see</u> <u>also</u> <u>Medina</u>, 2004 WL 136636, at *6 ("By lumping all the defendants together and failing to distinguish their conduct, plaintiff's amended complaint fails to satisfy the requirements of Rule 8. Specifically, the

allegations fail to give adequate notice to these defendants as to what they did wrong.");
Appalachian Enters., Inc., 2004 WL 2813121, at *7.

Even if IGY's Complaint could be found to assert an unfair competition claim against the
Non-contracting Defendants, the claim should still be dismissed for failing to sufficiently allege
the necessary elements of misappropriation.  First, IGY's Complaint fails to sufficiently
demonstrate that any property or benefit owned by it was misappropriated.  Although the
Complaint is unclear, it appears that the "property" or "benefit" allegedly misappropriated
constitutes either:  "confidential information" described in Section 5.02 of the Purchase
Agreement; the reports, studies and analysis contemplated in Section 2.02(b) of the Purchase
Agreement; or the "fruitful results of [IGY's] negotiations with the Bahamian government."  See
Compl. ¶¶ 97-99.

Section 5.02 clarifies that the information is to be "furnished to Seller about Purchaser, its
Affiliates and the IGY Unaudited Financials" which includes the IGY Partnership Agreement
and an unaudited balance sheet of IGY.  See Purchase Agreement, §§ 4.05 and 5.02 at 17 and 18.
This IGY-specific financial information, unrelated to the property, could not be what IGY
alleges was misappropriated and, indeed, IGY's Complaint does not allege that this information
was unfairly misappropriated.  See Compl. ¶ 97.  Rather, IGY attempts to mix this "confidential
information" with the "reports, studies, analyses and design plans" contemplated in Section
2.02(b) of the Purchase Agreement.  These "reports, studies, and analyses," however, by the
clear and express terms of the Purchase Agreement, belonged to the Contracting Defendants.
Section 2.02(b) explicitly provides that IGY's expenditure to produce these reports, studies and
analyses is to be considered a part of the deposit IGY was to make to purchase the property.  See

Purchase Agreement, § 2.02(b).  Indeed, this information was specifically generated for the "Property and its suitability for [*IGY's*] intended purposes"  Purchase Agreement, § 2.02.

Further, IGY's assertion that any defendant, let alone any of the Non-contracting Defendants, misappropriated the "fruitful results" of IGY's negotiations with the Bahamian government to use in a deal with a different partner is unavailing.  Simply, IGY has not and cannot assert that it possesses an exclusive or proprietary right to negotiate with the Bahamian government.  IGY's purported "fruitful results" is simply not a property right or benefit that can be misappropriated.  See Twombly, 127 S.Ct. at 1959 ("Factual allegations must be enough to raise a right to relief above the speculative level"); see e.g., Atari, Inc. v. Games Inc., No. 04 Civ. 3723, 2005 WL 447503, at *3 (S.D.N.Y. Feb. 24, 2005) (finding that the alleged misappropriation of 'services' will not support an unfair competition claim); Commercial Data Servers, 166 F. Supp.2d at 895 (dismissing unfair competition claim where plaintiff "failed to particularize its protected property rights in any of the purported 'innovations' it alleges" were misappropriated); Minnesota Mining and Mfg. Co., 96 Civ. 3839 (MBM), 1997 WL 166497, at *6 (S.D.N.Y. Apr. 9, 1997) (holding that allegations of misappropriation of 'market share' are insufficient to state an unfair competition claim).

Second, IGY's allegations are insufficient to demonstrate that the Non-contracting Defendants acted in "bad faith."  Setting aside that this allegation was directed towards OBI, OBII and BCDC, and not towards any of the Non-contracting Defendants, IGY alleges that "Defendants … have deliberately and willfully, by unfair and improper means, and in violation of their contractual and confidential obligations, misappropriated the labor and expenditures of IGY."  Compl. at ¶ 98.  This allegation, however, which provides no factual basis to support this claim, and is insufficient to show any "bad faith" on the part of the Non-contracting Defendants.

See Bulger, 2006 WL 3771016, at *8 (holding that bad faith was insufficiently pled where plaintiffs made the "conclusory allegation that "Defendants' conduct was willful, malicious, oppressive, and committed with actual or constructive knowledge, in gross derogation of Plaintff's rights and privileges"); see Twombly, 127 S.Ct. at 1959 (holding that a formulaic recitation of the elements of the cause of action will not suffice).  Because IGY has failed to provide any factual basis that Non-contracting Non-contracting Defendants acted in bad faith, IGY's cause of action for unfair competition must be dismissed.

F.  **PLAINTIFFS' SEVENTH CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS SHOULD BE DISMISSED**

The elements required to state a cause of action for tortious interference with prospective business relations have been previously set forth.  See supra § C.  Though Plaintiffs IGY and IGYL allege that "all defendants" have tortiously interfered with their prospective business relations with the Bahamian government, the Complaint does not make any allegations with respect to any of the Non-contracting Defendants.  Rather, the Complaint relies solely on the conclusory allegation that "but for" the allegedly tortious conduct of "defendants," the Bahamian government would either have issued IGY and IGYL a Heads of Agreement and ultimately allowed them to complete the Purchase Agreement as negotiated, or would have issued IGY and IGYL a license to undertake a similar project at another site.  See Compl. ¶ 103.  This claim, however, is insufficient and should be dismissed.

First, at no point does the Complaint identify any wrongful or tortious conduct by PRK, Adurion, or George Allen directed at the Bahamian government.  New York law requires Plaintiffs to allege some specific action taken by each defendant that interfered with IGY and IGYL's prospective business relationship with the Bahamian government.  See Am. Bldg. Maint.

Co. of N.Y. v. Acme Prop. Servs., Inc. 515 F. Supp. 2d 298, 317 (S.D.N.Y. 2007); see also Black Radio Network, Inc. v. NYNEX Corp., No. 96 Civ. 4138(DC), 2000 WL 64874, at *4 (S.D.N.Y. Jan. 25, 2000).  Notably, §§ 101-107 of the Complaint fails to make any allegations against any of these defendants.

Second, even if the Court were to assume, for purposes of this motion, that PRK, Adurion, and George Allen directed some tortious or wrongful conduct towards the government, Plaintiffs have failed to sufficiently allege that they have a "business relationship" with the Bahamian government.  Though Plaintiffs allege that they would have been granted a "Heads of Agreement" and that this, in turn, would have culminated in completion of the project contemplated by the Purchase Agreement, the Heads of Agreement is nothing more than a "license" to consummate the transaction.  It is site specific, and provides no rights other than those contemplated in the Purchase Agreement.  See Compl. ¶ 30 ("the Heads of Agreement would be, in effect, a license agreement between IGY and the Bahamian government, permitting the sale of the Property to IGY, approving the Project, and permitting IGY to use the seabed adjacent to the Property"). The Heads of Agreement does not grant Plaintiffs a license to develop a Marina on a *different* site and is nothing more than a zoning permit that sets forth the scope of the project and does not constitute a "business relationship" for purposes of a tortious interference with business relations claim. See Minnesota Mining and Mfg. Co., 1997 WL 166497, at *7 (claim dismissed where counterclaimant failed to allege a 'particular customer relationship' with which counterdefendant interfered).

Third, Plaintiffs' conclusory assertions that "Defendants acted in bad faith either with the sole purpose to harm IGY and IGYL or with wrongful, dishonest, unfair and improper means" are insufficient to allege that any of these tortious acts were undertaken "with the sole purpose of

harming the plaintiff or that such conduct was wrongful or improper independent of the interference allegedly caused thereby." See Compl. ¶ 105; Advanced Global Tech. LLC, 836 N.Y.S.2d at 809-10; see also Exportaciones, 2007 WL 3306699, at *2 ("simply reciting conclusory words like 'dishonest, unfair, or improper means,'" is insufficient to properly allege tortious interference with prospective business advantage) (internal citations and quotations omitted); see also Gianni Versace, S.p.A. v. Versace, 01 Civ. 9645 (PKL) (THK), 2003 WL 470340, at *2 n.2 (S.D.N.Y. Feb. 25, 2003) (noting that it was unlikely that counterclaim adequately alleged damages where allegations of wrongful means were conclusory).[7]

Fourth, Plaintiffs' alleged "injuries" are purely conjectural. As to their first claim, Plaintiffs have failed to show what benefit, apart from those contemplated in the Purchase Agreement, they would have received *but for* Non-contracting Defendants' alleged tortious conduct. Their second claimed "injury," based on developing a similar project at a different site, is equally, if not more, speculative. The Complaint makes this quite clear. See Compl. ¶ 13 ("Defendants' actions *could* cause irreparable harm to the fundamental business plan of IGYL and IGY which is to develop, own and operate luxury marina facilities, in this case on the island of Nassau and New Providence Island") (emphasis added); id. ("the same officials within government who worked on this transaction closely with IGYL *might* consider that IGYL does not have the ability or intention to complete an alternative marina development due to the failure to complete this transaction") (emphasis added). Given the purely implausible and speculative injuries alleged, Plaintiffs' cause of action for tortious interference with prospective business relations must be dismissed. See Camp Summit of Summitville, Inc., 2007 WL 1152894, at *15

---

[7] Wrongful means include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion along although it is knowingly directed at interference with a business relationship." Camp Summit of Summitville, Inc., No. 06-CV-4994 (CM) (GAY), 2007 WL 1152894, at *14.

(dismissing claims by camp counselor because she "failed to allege any facts demonstrating that her relations with former … campers would have translated into additional, personally lucrative contracts"); see also Gianni Versace, S.p.A., 2003 WL 470340, at *2 n.2.  Plaintiffs have simply not alleged facts sufficient to "nudge [their] claim[] across the line from conceivable to plausible."  Twombly, 127 S.Ct. at 1974.

## CONCLUSION

For the foregoing reasons, defendants PRK, Adurion and Allen respectfully request that the Court grant their motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) and dismiss all the claims in Plaintiffs' Complaint.

Dated:  New York, New York
　　　　December 21, 2007

　　　　　　　　　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　/s/ Bruce S. Meyer　　　　　　　　
　　　　　　　　　　　　　　　　Bruce S. Meyer (BM-3506)
　　　　　　　　　　　　　　　　Ryan P. Poscablo (RP-8496)
　　　　　　　　　　　　　　　　Weil, Gotshal & Manges LLP
　　　　　　　　　　　　　　　　767 Fifth Avenue
　　　　　　　　　　　　　　　　New York, NY 10153
　　　　　　　　　　　　　　　　(212) 310-8000

　　　　　　　　　　　　　　　　John T. Morin (JM-0390)
　　　　　　　　　　　　　　　　Jennifer L. Marlborough (JM-4303)
　　　　　　　　　　　　　　　　Wormser, Kiely, Galef & Jacobs LLP
　　　　　　　　　　　　　　　　825 Third Avenue
　　　　　　　　　　　　　　　　New York, NY 10022
　　　　　　　　　　　　　　　　(212) 687-4900

　　　　　　　　　　　　　　　　Attorneys for Defendants